## Hughes v. Hughes.

(Decided February 3, 1915.)

## Appeal from Knox Circuit Court.

1. Husband and Wife—Divorce—Alimony.—A married woman who is a non-resident of this State, and who, in a suit by her husband, in a court of this State for divorce, is summoned by constructive process, may at any time within five years from the rendition of the judgment, enter her appearance and file an answer and counter claim, and although she may not interfere with the judgment granting the divorce, she may, by showing that the husband ought not to have been granted a divorce, obtain a judgment for alimony against him, and have any other property rights, which she may have, determined.

2. Contracts—Compromise—Consideration.—A compromise of matters of controversy in relation to property, when both parties understand the facts, is a valid consideration for the making of a contract, and a court will not go behind such settlement to determine which party was right in the controversy, and will enforce the contract founded upon the settlement, if it is free from fraud and illegality.

3 Contracts—Compromise—Rescission.—A party to a contract which compromises matters of controversy between him and another, if the compromise was fairly made, will not be allowed afterwards to have it set aside, or the contract rescinded, because he finds out that he could have obtained a more favorable settlement in the courts than he did under the compromise contract.

J. M. ROBSION and BLACK, BLACK & OWENS for appellant.

J. D. TUGGLE for appellee.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

About the year 1880 W. R. Hughes, the appellant, and Mary Hughes, the appellee, were married in Pulaski county, Virginia. They were each residents of that county and State at the time of the marriage, and the appellee continued to reside in Virginia until the month of December, 1908, when she removed to the State of Oklahoma, where she has resided since that time. About the year 1892 or 1893 the appellant went to the State of West Virginia, where he engaged in some business enterprises, and from there to Catlettsburg, Kentucky, and finally came to Bell county and Knox county, Kentucky, in the year 1897 or 1898, where he has since resided.

The evidence for appellee conduces to show that from the time he left home and went to West Virginia, and

up until about the year 1903 or 1904 he frequently visited his wife in Virginia, and kept up correspondence by letters with her, and there was no pretense upon his part that he had abandoned his wife, until the year 1902 or 1903. There was one son as the result of said marriage, who is now a grown man of twenty-six or twenty-seven years of age.

The evidence of appellant conduces to show that he really abandoned appellee in the year 1892 or 1893, and that from that time on to the present time he had no marital relations with the appellee, but continued to send her money from time to time for her support and maintenance. He testified that previous to the year 1902 that he had frequently told her of his intentions to institute an action against her for divorce, but she denies same, and avers that she had no knowledge of his intentions to abandon her, or to sue her for a divorce, until in the year 1902.

Some time previous to July, 1902, he instituted a suit in the Knox Circuit Court against her for an absolute divorce, and procured a warning order to be made against her. She was at that time still residing in Pulaski county, Virginia, which fact was well known to him. At the July term, 1902, of the Knox Circuit Court the court adjudged that he be divorced from her. She testifies that she had no knowledge of the pendency of this suit until shortly before the judgment was rendered, when she learned that the suit was pending (not, however, by the information received from the non-resident attorney in the case), and she thereupon proceeded to make defense to the suit, and had a notice served upon him that she would have depositions taken in her behalf in Virginia. As soon as he became aware of what she purposed to do he came to her house in Virginia, and represented to her that he really had no grounds of divorce to prefer against her, and that he did not intend to obtain a divorce from her, but that he had gotten into trouble with a woman in Kentucky, and that his only way out of it was to institute this suit for divorce, but that she need pay no further attention to it, that he had caused the suit to be dismissed. She relied upon these statements and took no further steps about the matter; that he continued to write affectionate letters to her, as he had always done theretofore, and she did not learn of the fact that a divorce had been granted by the Kentucky court until some months after it had been done.

In these statements she was largely corroborated by her daughter, who resided with her, but they were all denied by him.

It seems that within a vew days after the divorce was granted that he married another woman in Knox county, Kentucky, to whom he had caused a house and lot to be conveyed, previous to their marriage. Appellee also learned of these facts. For the purpose of instituting a suit against him for alimony she sent a lawyer from Virginia to Barbourville, Kentucky, to investigate the divorce proceedings, and to take the legal steps necessary to obtain alimony from him. The lawyer negotiated with him about the matter, and the negotiations resulted in the following written contract, which was signed in duplicate, and one copy retained by him and one delivered to the attorney to be given to her. This contract is as follows:

"This contract, Witnesseth: that I. W. R. Hughes, of Knox county, Kentucky, did at the July term, 1902, of the Circuit Court of said county, obtain a divorce from Mary Hughes, my former wife, upon constructive service of process, she being a non-resident of the State of Kentucky, and a resident of Pulaski county, in the State of Virginia, and the said Mary Hughes, contemplating bringing an action against me in the said Circuit Court of Knox county, Kentucky, for alimony, that I agree and bind myself by this contract to pay the said Mary Hughes the sum of thirty-five dollars per month as alimony as long as she shall live, the said sum of thirty-five dollars to be paid to her monthly, and no action for alimony to be brought by her; provided that, if I remain default in the payment of any portion of said monthly allowance of $35.00 for six consecutive months, the said Mary Hughes may, at her option, demand and have of me thirty-five hundred dollars in full satisfaction of this contract; and provided further, that I may, at any time, if I choose, pay her the sum of thirty-five hundred dollars in full satisfaction of this contract; and I hereby waive all exemptions to which I may be entitled under the laws of the State of Kentucky as to this contract, and agree to pay J. C. Wysor, as attorney for Mary Hughes, the sum of $100.00 for his services in the premises.

"Witness my hand this 18th day of January, 1903.
"W. R. Hughes."

It seems that under this contract the appellant did not exercise his right to at once pay her the sum of $3,500.00 in full satisfaction of the contract, but elected to pay thirty-five dollars every month, as provided in the contract, and while he did not pay the thirty-five dollars each month as the contract provided for, he would at no time allow as many as six consecutive months to expire without having made payment, and this continued until the month of September, 1910, when he made no further payment until the 22nd day of February, 1911, when he paid her the sum of one hundred and five dollars, stating on the check that it was for the amounts due for the months of September, October, and November, 1910. After this date he did not pay nor offer to pay anything until the 10th day of September, 1911, when she received a check from him in payment for the amounts due for the months of December, 1910, and January, February, and March, 1911, but she would not receive this check, and returned it to him. About October 1st, 1911, he forwarded to her another check for two hundred and ten dollars, purporting to be in payment for the months of April, May, June, July, August, and September, 1911. This check she refused to receive and returned it to him. It seems that he was very negligent about making the payments, and she was compelled to write and ask for them; that she did so from time to time. At the first of September, 1911, he having defaulted in the payment for nine consecutive months previous to that time, she determined to exercise her right under the contract to demand from him the sum of thirty-five hundred dollars in full satisfaction of the contract, as provided in it, and at that time she put the matter in the hands of her attorney in Kentucky, and this is the reason she gives for not accepting the check of September 10th and October 1st, believing, as she says, suit had already been instituted.

She instituted this suit in the Knox Circuit Court to recover from him thirty-five hundred dollars mentioned in the contract. To this suit he filed an answer pleading that the contract was fully satisfied by the payment of the thirty-five hundred dollars, and that he had already paid thirty-three hundred dollars in monthly payments under the contract, and for that reason he was only due to pay two hundred dollars more, which he was willing to confess.

He also pleaded that the contract was without consideration, and for that reason nothing could be required of him under it. He likewise pleaded that the thirty-five hundred dollars, for which he was sued, was a penalty and not enforcible. He also set up and pleaded as a set off a note for the sum of $1,882.00, which he claimed she had executed to him on July 1st, 1893, and which was due three years after date, with interest at six per cent per annum from date, and asked that same be set off against any judgment which she might recover against him. A further plea interposed was that the appellee had made her son an agent for her to collect and send the monthly payments to her and that the son had failed to send the money to her, although he had a right to check upon appellant's funds and appellant had authorized him to do so.

She filed a reply in which she pleaded that the note was without consideration, and, furthermore, that it was executed and delivered to him when they were both citizens and residents of the State of Virginia, and was to be paid in the State of Virginia, and that she had remained a resident of the State of Virginia until the month of December, 1908, and that recovery on the note was barred by the statute of limitations on the first day of July, 1901, alleging also that the period of limitations upon a note of that character was five years from the time it became due, under the statute of Virginia. She also plead that it had been due more than fifteen years before the filing of this suit, and recovery upon it was therefore barred by the statute of limitations in the State of Kentucky. By rejoinder the appellant controverted the affirmative allegations in the reply, and upon these issues considerable proof was taken, a large part of it being directed as to whether or not the note plead in the set off by the appellant was or was not without consideration. The case being submitted in the trial court below, the court adjudged that the appellant had failed to manifest his right to have a judgment upon the note plead as a set off, and furthermore adjudged that the appellee recover of the appellant the sum of thirty-five hundred dollars, as sued for, with six per cent. interest per annum thereon from September 18th, 1911, the date of filing the suit, until paid, and her costs expended. From this judgment the appellant has appealed to this court.

There is no controversy as to the fact that appellant had remained in default in the payment of the monthly payments for six consecutive months at the time appellee elected to demand the thirty-five hundred dollars in full satisfaction of the entire contract. While on the 10th day of September she had received a check purporting to pay the monthly payments up to and including March, 1911, it, therefore, left him in default as to the five months of April, May, June, July, and August, when his contract provided, and what he had elected to do under the contract, to make a payment each month, and the reception of the check was after she had put the matter in the hands of an attorney with directions to institute a suit, which was filed thereafter on the 18th day of September. She, by her attorney, before the reception of said checks, had demanded of appellant the thirty-five hundred dollars.

In support of the contention that the writing sued upon was without consideration, the appellant, by counsel, argues that he at the time had been divorced from appellee for over six months, and that he was under no obligation to pay her alimony, and could not have been required to do so by law, and for that reason the writing is not enforcible. In support of this contention he cites statute 2122, Kentucky Statutes, which is as follows:

"If the wife have not sufficient estate of her own, she may on a divorce obtained by her have such allowance out of that of her husband as shall be deemed equitable, and be restored to the name which she bore before marriage, if she may desire it."

While this court in the case of Campbell v. Campbell, 115 Ky., 656, held that where the wife was the plaintiff in an action for divorce, and sued and obtained a divorce from her husband, that she could not thereafter maintain another suit for alimony against her husband, and obtain a judgment against him for alimony, unless she had claimed alimony, or made some reservation in the judgment of divorce concerning future support, in the suit in which she recovered the divorce.

In the case of Davis v. Davis, 86 Ky., 32, this court held that where a husband had instituted a suit for divorce against the wife, and that the suit had gone to judgment in favor of the husband, where the wife entered her appearance, and defended the suit, that while

the judgment for divorce cannot be questioned on appeal, nor set aside, but if it appears that the divorce was wrongfully obtained by the husband, it would not bar the wife from recovering alimony in that suit, and that she could not be deprived of her alimony simply because the divorce was not obtained by her, as should have been the case.

This court also held, in the case of Butler v. Butler, 4 Littell, 206, and in Hulette v. Hulette, 80 Ky., 364, that in as much as the marital obligation imposed on the husband the duty of supporting and maintaining the wife, in a case where the husband had abandoned the wife, or where the treatment of her was such as to compel her to leave him, she could maintain a suit for maintenance against her husband without actually instituting a suit for divorce.

In this case it is not necessary for the court to inquire as to which of the parties was at fault as to their separation; but the fact that the husband obtained a divorce on the 31st day of July, and married again on the 10th of August following, is rather indicative of the fact that he was not free from fault in the matter of their separation.

The suit he instituted was in the State of Kentucky, against his wife, whom he knew lived in the State of Virginia, and he only had constructive process against her.

While it is true that, under Section 414 of the Civil Code, a defendant in an action for divorce cannot within five years after the rendition of the judgment, move to have the action retried, and be admitted to make defense as if there had been no judgment, but by analogy to the case of Davis v. Davis, *supra,* she did have a right within five years to reopen the case to the extent of showing that the divorce had been wrongfully obtained, and to secure her property rights in spite of the judgment for divorce. The concluding portion of this statute is very significant when it says, ''but this section does not apply to judgments for divorce, so far as the divorce is concerned.''

This court held, in the case of Lacey v Lacey, 95 Ky., 110, that the wife's right to alimony was not confined to cases where the action for divorce was instituted by her, and that where the wife is entitled to a divorce, although the action is instituted by the husband, she is entitled to

alimony, and Section 2121, Kentucky Statutes, says: "Upon final judgment of divorce from the bonds of matrimony the parties should be restored such property not disposed of at the commencement of the action as either obtained from or through the other before or during the marriage in consideration thereof."

Construing all of these sections together, we see no good reason in the contention that because the husband instituted the suit for divorce, and, without actual warning to his wife, and did obtain a divorce, that it should preclude her, being a non-resident, from the same processes of law which other persons have, to come into court within the period of five years after the rendition of the judgment, and relitigate the matters in issue, or the ones which she has a right to put in issue, where her right to do so is not clearly prohibited by the statute.

If the evidence for appellee in this case is true, it appears that the judgment for divorce was obtained by the appellant by fraudulently representing to appellee that the suit had been discontinued, and thus causing her to rest in supposed security, until his object was obtained in getting rid of appellee as his wife, and marrying another woman.

In as much as the appellee had a right to reopen the suit of her husband against her for divorce to the extent of filing an answer and counter-claim, and asking alimony of him, there was then an actual controversy between appellant and appellee, which they could adjust by a settlement between themselves.

Appellant in his deposition first states that the attorney for the appellee, who came to see him from her home in Virginia, said to him, that if a satisfactory arrangement could not be made for the protection of the rights of the appellee, that she would institute a suit against him, or, in substance, to that effect. Appellant and appellee had a right then to adjust their differences by mutual agreement and compromise of the matters in controversy between them, and, if the parties understood the facts, it does not matter if afterwards one of them should find out that he or she could have obtained a better settlement in the courts than was agreed upon.

This court held, in Taylor v. Patrick, 1 Bibb., 168, "that the compromise of a doubtful claim is a good consideration to uphold a contract, and it is immaterial on which side the right ultimately turns out."

In the case of Fisher v. May's heirs, 2 Bibb., 448, this court held: "That the compromise of doubtful claims is a good consideration to uphold a contract, and the court will not investigate the relative merits and demerits of the two claims for the purpose of setting aside the compromise." The law allows the settlement of disputed questions, both as to law and facts, by the parties by their mutual agreement, and if both parties are capable of contracting, and understand the facts, it would be idle for them to make a compromise settlement, if one or the other could thereafter escape his obligations in the settlement by showing that he was right in regard to the controversy.

It was in settlement of the disputed rights of appellant and appellee that the paper sued on was executed, and the contract in it made. We think that this is a good and valid consideration for its execution.

The contention of appellant that his son, S. Davis Hughes, was the agent of both he and the appellee, and that he had intrusted to him the sending of the payments to his mother, and if he had failed to do so, that was her fault, and not that of the appellant, is clearly without merit. S. Davis Hughes was the bookkeeper and servant of appellant, and, while he made out the checks which were sent by him to the appellee to make the monthly payments to her, he performed the same labor for his father in sending checks to other persons with whom he had business transactions, and we find no evidence in the record which would show that he had ever been made the agent of appellee, and it would be difficult for him to be the agent of his mother to collect the money and the agent of his father to refuse to forward it. It was the duty of the appellant to make these payments, and however his son may have been the agent to receive them, which it does not appear that he was, he was the agent of his father to send them, and if he failed to do so, it was the fault of the appellant.

The contention of appellant that the condition in the contract that, in the event he should fail for six consecutive months to make the payments, that the appellee had a right to require him to pay her thirty-five hundred dollars, is a penalty, and is not enforcible, is also, in our opinion, without merit. It was plainly evident that the contract was intended to be a means of support to the appellee for and during her natural life, and that

she should have a payment of thirty-five dollars a month for each month during her natural life, and the writing expressly provides that the appellant shall pay her thirty-five dollars each month, and he is given, at the beginning, the choice of paying to her a gross sum of thirty-five hundred dollars in satisfaction of the entire contract upon his part, or to pay her thirty-five dollars a month for every month during her natural life. He elected to pay thirty-five dollars per month, but when he did so, he could not escape the plain provisions of the contract, that he should pay her thirty-five hundred dollars, if she elected to accept that in full staisfaction of the contract, when he had been in default for six consecutive months.

These obligations were reciprocal, the one being that the appellant could discharge the entire contract by paying thirty-five hundred dollars at once, and, in that state of case, the appellee was obliged to receive it; and the other condition is that in certain states of case she may demand thirty-five hundred dollars in full satisfaction of the contract, and the obligation certainly rests upon the appellant to pay it. It is not that appellant shall pay thirty-five hundred dollars because he fails to pay two hundred and ten dollars, as contended by him, but in the event he is in default, he shall then pay at once the sum which the parties seem to have considered a sufficiency to maintain appellee during the remainder of her life.

In Volume 13, Cyc. of Law and Procedure, page 90, it is stated as follows: "As to when a sum agreed upon is to be paid as damages for the violation of an agreement should be considered as liquidated damages, or only as a penalty, is held to depend upon the meaning and intention of the parties as gathered from a full view of the provisions of the contract, the terms used to express the intent, and the peculiar circumstances of the subject matter of the agreement. The contract is to govern; and the true question is, what was the contract? Whether it was folly or wisdom for the contracting parties to thus bind themselves is of no consequence, if the intent is clear. If there be no fraud, circumvention, or illegality in the case, the court is bound to enforce the agreement. In order to determine whether the sum named in a contract as a forfeiture for non-compliance is intended as a penalty or as liquidated damages, it is nec-

essary to look at the whole contract, its subject matter, the case or difficulty in measuring the breach in damages, and the magnitude of the stipulated sum, not only as compared with the value of the subject of the contract, but in proportion to the probable consequences of the breach.''

There can be no question about the contract in the case at bar. There is no fraud, circumvention, or illegality hinted at in reference to it. It certainly does not mean, as the appellant contends, that in no state of case only thirty-five hundred dollars shall be paid.

It was for the benefit of the appellant that he had the choice in the beginning, and if he then saw fit afterwards to discharge his entire obligation by paying thirty-five hundred dollars, the appellee was bound to receive that; but after appellant chose to pay thirty-five dollars each month, as the agreement stated he might, he could not, by so doing for his own benefit, stretch out the payments from year to year, and then become in default of the payments, and require appellee then to accept thirty-five hundred dollars, less what he had already paid her by the month.

We know of no rule for determining the probable consequences of the breach of this contract, as to the appellee, or what she would suffer by it, because it is impossible to determine the length of her years, except the probable length estimated by the tables of mortality, and for that reason it could not be considered that the thirty-five hundred dollars was a penalty for the failure of appellant paying six monthly payments under this contract. Looking at the whole contract, it is impossible to fail to see that it was agreed and understood that in the event the appellant should be in default, that the amount agreed upon by them as a settlement of the breach should be thirty-five hundred dollars, and it is apparent, from the nature of the case, and the tenor of the agreement, that, in the language of the Cyc. of Law and Procedure, page 90, *supra,* ''that the damages when the contract was made was the subject of actual and full calculation and adjustment between the parties.'' The consequences of a breach of this contract by appellant would have been that he would have escaped the payment of the monthly payments for the remainder of the life of appellee, and appellee would have lost them, and the probable consequence is that the amount of

money which would have been saved by appellant and lost by appellee would have amounted to the sum sued for, or practically so.

The appellant also complains that the court refused to give him a judgment upon the note, which he plead as a set off. To this the appellee interposed two pleas, the one, want of consideration, and the other the statute of limitations. Upon the subject of want of consideration the appellee testifies, and in that she is corroborated by her daughter, that when this note was executed that the appellee received nothing in consideration of it; that appellant represented to her that he was in a great financial difficulty, and that if she would execute the note that he could use it as a security, and save them from losing all of the property that he had, and that she should never have it to pay, and that he never called upon her to pay it; that he had said to her fifty times that the note had been destroyed, and that she should never hear of it; and the fact that when the agreement sued on was made, and all of the payments made under that agreement, without appellant ever having undertaken to collect it, or said anything about it, very strongly conduces to show that the appellee is right in her contention upon that subject. The statement of appellant that the note was given to him in consideration of his conveying the property that he owned in Virginia to the appellee, and that she executed to him a mortgage upon the property to secure the note, which mortgage is copied in the record, strongly indicates that the appellant is right in regard to the consideration for the note. It does not seem, however, that the appellant regarded the ownership of it as of any particular value to himself, since he never had the trust deed recorded in Virginia, and he does not call upon any of his neighbors in Virginia to prove the truth of his assertion, when it is evident that he could have done so easily, if they would bear out his statements, makes the transaction as being one in good faith, and for a valuable consideration, extremely suspicious.

The chancellor below was the judge of the weight of all of this evidence, and if he refused a judgment upon the note, by reason of his belief that it was without consideration, it is not so flagrantly against the evidence that we would feel justified in determining the issue otherwise. This note, if valid, was executed on the first

day of July, 1893, and was due three years thereafter, which would be the first day of July, 1896, and, whether the law of the place where the note was made, or the law applying in this State as to limitation of an action upon a promissory note is to be applied to this one, recovery upon it is barred by the statute of limitations in either jurisdiction. Under the statute of Virginia, recovery upon a note of this character, according to the evidence, is barred by the statute of limitations five years after it becomes due. Therefore, it would have been barred in the State of Virginia on the first day of July, 1901, and the contention of appellant that under the statute of Virginia that recovery upon it would not be barred because the appellee removed from the State of Virginia in the year 1908, is without merit, because it would have already been barred seven years before she removed. The statute in Kentucky would prevail against recovery upon it fifteen years after it became due. It seems that more than fifteen years had expired from the time it became due until action was brought upon it.

It is, therefore, not necessary to determine whether the law of the place or the law of the forum applies in this action.

For the foregoing reasons the judgment appealed from is affirmed.