RALPH J. M. BULLOWA, PLAINTIFF-APPELLANT, v. THER-
MOID COMPANY, A BODY CORPORATE, DEFENDANT-
RESPONDENT.

Argued October 26, 1934—Decided January 10, 1935.

For the appellant, *John E. Selser*.

For the respondent, *Louis Rudner*.

The opinion of the court was delivered by

HEHER, J. Plaintiff sued to recover the principal of two five-year sinking fund gold notes, each in the sum of $1,000, issued by the defendant-corporation on February 1st, 1929, payable on February 1st, 1934, with interest at six per cent. in semi-annual installments, and now held by him. These notes were issued under an indenture of trust, bearing even date, made by the obligor to the National Bank of Commerce in New York (now merged in the Guaranty Trust Company of New York) as trustee. The total authorized issue was $3,000,000, and the actual issue $2,847,500—all maturing on the day mentioned.

The complaint was struck out on the ground that plaintiff did not, under the provisions of the trust indenture, have a

right of action enforceable directly against the obligor, and from the consequent judgment this appeal was taken.

The primary inquiry is whether the noteholder is vested, upon the normal maturity of the obligation, with a right of action at law thereon, unless and until the trustee shall refuse or neglect, as provided in section 8 of the trust indenture, to institute appropriate proceedings, by way of remedy, within a reasonable time after request made by the holders of twenty-five per centum in principal amount of the notes then outstanding.

It is suggested by appellant, *in limine,* that the notes express on their face an absolute and unconditional promise to pay the principal sum thereof to the holder at maturity, and that the holder is not bound by provisions of the indenture imposing a restriction upon his right to enforce the obligation on the day of maturity so expressed therein, unless notice thereof, in reasonably clear language, is contained therein. The principle that any inconsistency between the note and the indenture must be resolved in favor of the noteholder is invoked. *Enoch* v. *Brandon,* 249 *N. Y.* 263, 268; *Rothschild* v. *Rio Grande and Western Railroad Co.,* 84 *Hun.* 103, 110; *affirmed,* 164 *N. Y.* 594; *Cunningham* v. *Pressed Steel Car Co.,* 238 *App. Div.* 624. Here, it would seem, the note explicitly incorporated, by reference, the provisions of the indenture into the obligation. Aside from references to specific provisions of the indenture, relating to taxes imposed upon the holder of the note, as such, the sinking fund thereby created for the noteholders, the terms upon which the notes are callable, and the rights of the noteholders in event of a default in the performance of the contractual obligation, each note contained the declaration that it was one of an authorized issue of notes of the obligor, under the trust indenture referred to, "to which indenture reference is hereby made for the terms and conditions on and under which the notes have been or are to be issued and the nature and extent of the rights of the holders of the notes, of the company and of the trustee." Thus the holder of the obligation was clearly put upon notice that the indenture itself declares the "nature

and extent of the rights" of the noteholders, the obligor and the trustee. But it is unnecessary to pursue this inquiry. Assuming that the terms and provisions of the indenture are binding upon the noteholders, they do not restrict the right of individual action upon the obligation at the normal as distinguished from an accelerated maturity thereof.

The promise to pay the principal sum on February 1st, 1934, contained in the note, is absolute and unconditional, and the covenantor must, of necessity, respect that obligation, unless it is modified by the terms of the indenture. Defendant asserts such modification by virtue of the provisions of section 8 thereof. It is in the language following:

"Section 8. In order to promote and protect the equal and ratable rights of every holder of the notes and to avoid multiplicity of suits, all the notes shall be subject to the condition that all rights of action thereon, or in respect thereof, or on or in respect of the coupons thereto appertaining, are vested exclusively in the trustee, and that no holder of any of the notes or coupons appertaining thereto shall have any right to institute any action, at law or in equity, upon the notes or any of the appurtenant coupons, or growing out of any provision thereof, or of this indenture, or for the enforcement of this indenture, unless and until the trustee shall refuse or neglect to institute proper proceedings by way of remedy within a reasonable time after request of the holders of twenty-five per cent. in principal amount of notes then outstanding, filed with the trustee, with an offer of satisfactory indemnity; and any recovery in any action or proceeding instituted by the holder of any of the notes or appurtenant coupons shall be for the equal *pro rata* benefit of all outstanding notes similarly situated, and, for the protection and enforcement of this section 8, each and every noteholder and the trustee shall be entitled to such relief as can be given either at law or in equity; provided, however, that nothing herein or elsewhere in this indenture or in the notes or in the coupons shall affect or impair the obligation of the company, which is unconditional and absolute, to pay at the date of maturity therein expressed the principal of the notes and

the interest thereon to the respective holders of the notes and coupons at the time and place in the notes and coupons expressed, or affect or impair the right of action, which is also absolute and unconditional, of such holders to enforce such payment or shall affect or impair the right of the owner of any warrant to enforce the provisions thereof as provided by the terms of section 10 of article 2 hereof."

Respondent points to the provision that "all rights of action" upon the notes "are vested exclusively in the trustee," and that the noteholder shall not have a right of action upon his obligation unless the trustee "shall refuse or neglect to institute proper proceedings by way of remedy within a reasonable time after request" so to do, made by the holders of twenty-five per centum in principal amount of the notes outstanding, with an offer of satisfactory indemnity. But this clause is explicitly limited and qualified by the proviso that nothing therein contained shall "affect or impair the obligation of the company, which is *unconditional and absolute,* to pay *at the date of maturity therein expressed* the principal of the notes and the interest thereon to the respective holders * * * at the time and place in the notes and coupons expressed, or affect or impair the *right of action,* which is also *absolute and unconditional,* of such holders to enforce such payment * * *." The essential question, therefore, is to determine the scope and effect of this proviso.

In this inquiry we are guided by well established rules of interpretation. The ascertainment and effectuation of the intention of the parties, as manifested by the language employed and the objects to be accomplished, are the ends to be served in the interpretation of written agreements. The standard of interpretation of an integrated agreement, such as this, is, with certain qualifications not here pertinent, the meaning that would be attached to the integration by a reasonably intelligent person. *Corn Exchange National Bank and Trust Co.* v. *Taubel,* 113 *N. J. L.* 607; 175 *Atl. Rep.* 55. The general purpose of the contract, as expressed by the words and other manifestations of intention employed, when read and considered as a whole, is the thing sought. Effect,

if possible, will be given to all parts of the instrument, and a construction which gives a reasonable meaning to all its provisions will be preferred to one which leaves a portion of the writing useless or inexplicable; and if this is impossible, a construction which gives effect to the main apparent purpose of the contract will be favored. The freedom of construction permissible is, however, necessarily limited by the principle that unexpressed intention is of no legal effect. Where there is a repugnancy between the general clauses and specific ones, the latter will govern; and even if there is no actual repugnancy, taking the words of the contract literally, and from the whole instrument it appears that the purpose of the parties was solely directed to the particular matter to which the special clause or words relate, the general words will be restrained. *Williston on Contracts*, § 619; 13 *C. J.* 535. A construction that will void a clause of the contract for repugnancy, or the entire instrument for uncertainty, is to be avoided, if possible. Where the provision does not destroy the original covenant, but leaves a portion of it remaining, it is not void for repugnancy. *Williams* v. *Hathaway*, 6 *Ch. D.* 545, 549.

Applying these principles, we have no difficulty in determining the general plan and purpose contemplated and expressed in this instrument. A right of action is vested in the trustee. In the event of an intermediate default, the right of action, in the first instance, is vested exclusively in the trustee. These "events of default" are expressly declared by the indenture to be: (1) a default in the payment of any installment of interest on any of the notes, and a continuance thereof for thirty days; (2) a default in the payment of the principal of or premium due upon any of the notes, whether "at maturity, by call for redemption, by declaration or otherwise;" (3) default in the payment of any installment of the sinking fund thereby granted, and a continuance thereof for sixty days; (4) default in the observance or performance of any other of the covenants, conditions and agreements, and a continuance thereof for sixty days after written notice thereof shall have been given to the company

by the trustee or by the holders of ten per cent. in principal amount of the notes then outstanding; and (5) in the event of bankruptcy or insolvency of the obligor, under certain prescribed conditions, or the recovery of a judgment against the obligor, or the fastening of a lien upon any of its property, and failure to discharge the same within a specified time.

If the maturity shall have been accelerated by one of the prescribed "events of default," the trustee may, in its discretion, fail to institute proceedings to enforce the obligations, and the right of the noteholders so to do, by direct action against the covenantor, does not accrue, by the express provision of section 8, until the trustee shall refuse or neglect to take action within a reasonable time after request so to do, made by the holders of notes in the requisite aggregate principal sum. But no such limitation is imposed upon the noteholders at the normal maturity of the obligation. The provision in question is explicitly limited and qualified by the reservation of the proviso that nothing therein contained shall affect or impair the unconditional and absolute obligation of the company to pay the principal of the notes and the interest thereon to the respective holders *at the date of maturity therein expressed,* or the correlative *absolute and unconditional* right of the noteholder to enforce the obligation at such maturity. It is axiomatic that a right of action dependent upon the failure of the trustee to act, when petitioned so to do by the holders of twenty-five per cent. in principal amount of the notes outstanding, is not an absolute and unconditional one. That would be a contradiction in terms. Therefore, to give effect to the proviso, it must of necessity be construed as limiting and modifying the provision of the prior clause vesting the right of action exclusively in the trustee. At the time of the institution of this action, eighty per cent. of the noteholders had given assent to a plan to fund the debt. It was clearly not within the contemplation of the parties that, upon default in the payment of the note at the date of maturity expressed therein, a noteholder would be remediless because the trustee refused to

proceed to enforce collection, and the holders of notes in the requisite principal amount did not, as in the instant case, join in demanding action by the trustee. Such a purpose will not be implied; it must be explicitly declared.

And the provisions of section 3 (b) and section 4 of the indenture do not lead to a different result. Section 3 (b) merely obliges the company, in the event of a default in the payment of the principal or premium due upon any of the notes "whether at maturity, by call for redemption, by declaration or otherwise," to pay to the trustee the whole amount due and payable on the notes and coupons outstanding, upon demand of the trustee, the making of which is discretionary unless it shall be requested so to do by the holders of twenty-five per cent. in principal amount of the outstanding notes. Until such demand is made, the obligor may pay the amount of each obligation direct to the holder thereof. Section 4 provides that, in event the company shall fail to comply with such a demand, the trustee is "entitled and empowered," and, upon the request in writing of holders of twenty-five per cent. in principal amount of the outstanding notes, accompanied by satisfactory security and indemnity against the costs, expenses and liabilities to be incurred thereby, is obliged to "institute such action or proceeding at law or in equity as it may be advised by counsel, for the collection of the sum so due and unpaid, * * *."

It may well be that if the obligor, after the normal maturity of the obligations, paid to the trustee, in accordance with a demand made under section 3 (b), the moneys necessary to satisfy the note obligations, or the trustee, pursuant to the authority conferred by section 4, instituted appropriate proceedings to compel the covenantor to discharge its obligation in the premises, the noteholder would not have an enforceable individual right of action directly against the company. But the moneys necessary to discharge the obligations were not paid by the company, nor was any action taken by the trustee, and, in that situation, the right of individual action, explicitly reserved to the noteholders by the proviso annexed to section 8, cannot be denied. Other-

wise, the proviso would serve no purpose. The interpretation urged by the respondent corporation would render this provision meaningless and useless, and it is therefore one to be avoided, if possible. This clause should, if practicable, be given a utility consistent with the general scheme and purpose of the contract. Moreover, a construction that will deprive the holder of such an obligation of all remedy to enforce payment thereof at the date of maturity therein expressed, unless the holders of twenty-five per cent. in principal amount of the outstanding obligations join in requesting the trustee to act, is likewise to be avoided. Such a purpose is inconsistent with the expressed unconditional and absolute promise of the obligation, and the contract will not be so construed unless that common intention is expressed in clear and unambiguous language. Compare *Mack* v. *American Telephone Co.,* 79 *N. J. L.* 109. Clauses of this character, restrictive of the common law right of a creditor, who holds a plain obligation of his debtor, are not favored in law, and must be strictly construed. *Reinhardt* v. *Inter-State Telephone Co.,* 71 *N. J. Eq.* 70, 77; *Schultze* v. *Van Doren,* 64 *Id.* 465; *affirmed,* 65 *Id.* 764; *Guaranty Trust Co.* v. *Green Cove Railroad Co.,* 139 *U. S.* 137; 11 *S. Ct.* 512; 35 *L. Ed.* 116; *Noble* v. *European Mortgage and Investment Corp.,* 19 *Del. Ch.* 216; 165 *Atl. Rep.* 157. In *Schultze* v. *Van Doren, supra,* Vice-Chancellor Pitney, in applying the apposite principle said: "The right given to the trustee to foreclose is cumulative, and not exclusive of the right of the bondholders. Their rights arise out of the fact that they are the parties beneficially interested in the mortgage security. It is primitive and fundamental in its character, and can be taken away only by some provision, express or implied, found in the instrument itself."

The cases relied upon by respondent are not in point. The contracts construed did not contain a provision of like import. *Chicago, Danville, &c., Railroad Co.* v. *Fosdick,* 106 *U. S.* 47; 27 *L. Ed.* 47; *Allan* v. *Moline Plow Co.,* 14 *Fed. Rep.* (2d) 912; *McGeorge* v. *Big Stone Gap Imp. Co.,* 57 *Fed. Rep.* 262. In *Home Mortage Co.* v. *Ramsey,*

49 *Fed. Rep.* (*2d*) 738, there was an accelerated maturity due to an intermediate default, but there had been no default in the payment of the principal or interest due upon the bonds. The bill was simply for a receivership of the property of the corporation, on the theory of misconduct and incompetency in the handling of a trust estate,˙ and it was held that such a remedy is to be resorted to only in cases of necessity, and when no other relief can be had, and that the allegations of the bill had not been sustained.

A contract containing a similar provision was construed thus by the Circuit Court of Appeals for the Second Circuit: "The obligor is to pay the trustee, so far as he has not paid the bondholders, and the bondholders, so far as he has not paid the trustee. But if he pays neither, he has defaulted upon both promises, for the condition defeating each obligation is unfulfilled. Each promisee has a right of action, subject *pro tanto* to a defense, in so far as the obligor may have performed the other, which even survives judgment." *In re United Cigar Stores Co.,* 68 *Fed. Rep.* (*2d*) 895.

It is suggested by counsel for respondent that the "intention of the proviso may well have been to assure the negotiability of the notes." But, if that were the purpose, its effectuation of necessity requires a construction that would vest in the holder thereof the absolute and unconditional right of enforcement of the covenant at the normal maturity thereof. In one of our federal jurisdictions it has been held that a similar proviso "was certainly intended to insure the negotiability of the bonds, and for that reason, as well as because of its terms, must be deemed imperative," although it apparently contradicted a prior provision requiring the obligor to pay to the trustee, in the event of a default in the payment of the principal of the obligation, the whole amount which shall then have become due and payable. *In re United Cigar Stores Co., supra.*

Counsel also maintains that this "interference" with the funding program by a "few creditors" of the obligor is contrary to the present policy of our federal and state governments, and that the effect of the adoption of appellant's

construction of the contract "will be nothing short of permitting the few lines covered by the proviso completely to destroy the whole of section 8 and the previous sections of article 4," and that "if there be any doubt about the intended effect of this proviso, it should be construed fairly and reasonably, 'but leaning, if need be, in any case of ambiguity, in favor of the debtor,'" citing *Chicago, Danville, &c., Railroad Co.* v. *Fosdick, supra.*

But the first phase of this argument is manifestly addressed to legislative policy—the exercise of legislative power in times of emergency—rather than to a justifiable rule of interpretation. And as to the second, as hereinbefore pointed out, if there be doubt as to the sense in which the parties employed the language in question, and it is fairly susceptible of two interpretations, the one more favorable to the noteholder will, under well settled rules of construction, be adopted. Another familiar principle of interpretation here comes into play. A secondary rule of construction, in aid of the application of the foregoing standard of interpretation, is that where words or other manifestations of intention bear more than one reasonable meaning, they will be read most strongly *contra proferentem,* unless their use by him is prescribed by law. *Rockmiss* v. *New Jersey Manufacturers, &c., Co.,* 112 *N. J. L.* 136; *Vailsburg Motor Corp.* v. *Fidelity, &c., Co.,* 110 *Id.* 209; *A. L. I. Contracts,* § 236; *Williston on Contracts,* § 621. In *Monnett* v. *Monnett,* 46 *Ohio St.* 30, 34, the apposite rule was applied: "If possible with such helps, they should be given such construction as will uphold the contract, and give effect to the intention of the parties, rather than one which renders them void for uncertainty; and to avoid the latter alternative, the words will be taken most strongly against the person employing them, especially where he is the only party subscribing the contract. The words of obligation in a contract are interpreted most strongly against the obligor, for it is presumed that he used those most favorable to his interests; and all doubtful terms or ambiguous words are to be construed against him. He who speaks, should speak plainly, or the other party may explain to his

own advantage." The underlying reason for this rule is that a person is responsible for ambiguity in his own expressions, and has no right to induce another to contract with him on the supposition that his words mean one thing, while he hopes the court will give them a different sense more to his advantage. *Fowkes* v. *Manchester, &c., L. Assur., &c., Association,* 3 *B. & S.* 917; 113 *E. C. L.* 917; 122 *Reprint* 343. The instant case aptly illustrates the underlying considerations and the justice and wisdom of the rule.

It results that appellant, at the time of the institution of this action, was vested with a right of action upon the notes in question, and that the order striking the complaint, and the consequent judgment, are erroneous.

Judgment reversed, and cause remanded for further proceedings not inconsistent with this opinion.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, LLOYD, CASE, DONGES, HEHER, VAN BUSKIRK, KAYS, HETFIELD, DEAR, JJ. 11.