ROSE JAPHA *v.* DELAWARE VALLEY UTILITIES COMPANY, a corporation created by and existing under the laws of the State of Delaware.

(*July* 12, 1940.)

RODNEY and SPEAKMAN, J. J., sitting.

*Max Terry* for plaintiff.

*Daniel F. Wolcott* for defendant.

Superior Court for Kent County, Debt, No. 42, February Term, 1939.

RODNEY, J., delivering the opinion of the Court:

It has become quite usual in corporate indentures securing bond issues to include certain clauses which are, at times, called "no action clauses" or "Limitation of Action Clauses." Reasonable restrictions on the right of an individual holder of one or more of a series of corporate bonds, either in respect to the obligation or of the security, have generally been held valid and enforceable. These reasonable restrictions are viewed as not tending to interfere with the jurisdiction of the court, but as wholesome restrictions imposed for the benefit of all bondholders, and to increase the value and salability of the bonds. The binding effect of restrictions on the right of an individual bondholder to maintain an action has been recognized in *Noble v. European Mortgage & Investment Co.*, 19 *Del. Ch.* 216, 165 *A.* 157; *Halle v. Van Sweringen Corporation*, 7 *W. W. Harr.* (37 *Del.*) 491, 185 *A.* 236, and in *Tietjen v. United Post Offices Corporation*, 19 *Del. Ch.* 343, 167 *A.* 846, although in the first two cited cases the purported restrictions

were held not operative as preventing the actions there involved. In Delaware, however, it has been held that, being in derogation of the common-law rights of creditors, such restrictions are to be strictly construed and are effective only insofar as they are clear and reasonably free from doubt; that they are not to be extended by implication. *Noble v. European Mtg. & Inv. Corp., supra.*

The validity of reasonable restriction of the right of action of individual holders of bonds being admitted, and the rule of strict construction being kept in mind, the instant problem becomes one merely of construction. Indeed, of the great mass of cases upon the subject almost all have involved merely a matter of construction of the pertinent indenture, for each case has been governed by the varying phraseology of the particular clauses.

Under these circumstances, it becomes unnecessary to cite and discuss many of the cases. All those which a reasonably exhaustive inquiry have developed are collected in a comprehensive annotation in 108 *A. L. R.* 88. We shall content ourselves with an expression of our own views and the citation of only those cases involving precisely similar provisions.

It is our duty to construe *Sec.* 1 in connection with *paragraphs* (*a*) and (*b*). In this construction we are, of course, to be guided by well-established rules of construction, including the rule that in ascertaining the intent of the parties, the true aim of all construction, effect must be given, where possible, to all parts of the instrument, and a construction which gives a reasonable meaning to all its provisions will be preferred to one which must totally reject a portion as repugnant or inexplicable.

We think that *paragraphs* (*a*) and (*b*) are exceptions carved out from the general operation of the preceding provisions of *Sec.* 1.

The first part of Sec. 1 is general in its terms, and without limitation. It states that all rights of action on the debenture or coupons are vested exclusively in the trustee, and that no holder of debenture or coupons shall institute any suit on the debenture or coupons until the trustee shall have refused or neglected to institute proceedings within a reasonable time after the request of the holders of 40% of the debenture.

Now Paragraph B is a part of Sec. 1 and is clearly an exception from the generality of its provisions. It provides in explicit terms that when a debenture has been called for redemption and not paid, that the holder of such debenture may institute proceedings to enforce payment without recourse to the trustee or to the holder of any other debenture. We think nothing could be clearer than that Paragraph B is an exception to the provisions of the preceding portion of Sec. 1.

Paragraph A is also a part of Sec. 1 and is, in our opinion, equally an exception from its general terms. Paragraph A reiterates the unconditional and absolute obligation of payment of the debentures and of the coupons at the times fixed for their payment. Now this absolute promise to pay appears in other places in the indenture and in the debenture, and its redundant inclusion in Paragraph A of Sec. 1 can be explained by the fact that Paragraph A deals solely with the question of rights at maturity. Not only does Paragraph A state an unconditional and absolute promise to pay the debentures and coupons at maturity, but it expressly states:

"Nothing in this Article or elsewhere in this Indenture or in the debentures or in the Coupons shall * * * affect or impair the right of action, which is also absolute and unconditional, of such holders to enforce such payment."

Now it is quite clear that the word "such" preceding the word "holders" means the holders of the debentures or

coupons, and it is equally clear that the word "such" when referring to payment means the payment just mentioned, viz. payment at maturity. So we see by *Paragraph A*:

"Nothing in this Article or elsewhere in this Indenture or in the debentures or in the coupons shall * * * affect or impair the right of action, which is also absolute and unconditional, of * * * holders [of coupons] to enforce * * * payment [thereof at maturity.]"

Now this absolute and unconditional right of action vested in the holders of coupons to enforce payment of coupons after maturity is totally inconsistent with the rights of action provided by the first part of Sec. 1—if the two provisions could be considered as covering the same subject matter. The right of action given by the first part of Sec. 1 is not an absolute and unconditional one in any sense. It is dependent upon the action of 40% of the holders of debentures or coupons, and is contingent also upon the neglect or refusal of the trustee to act, and so we have a very contingent right of action by Sec. 1 and an absolute and unconditional right of action provided by Paragraph A upon maturity of the debenture or coupons. We think the apparent inconsistency or repugnancy of the provisions is explained by the fact that the two provisions were not intended to cover the same state of facts.

*Sec. 3 of Art.* 8 of the indenture sets out six "events" which are declared to be "events of default." Upon the happening of any of these events the time of payment of the debentures and coupons may, under certain circumstances, be accelerated and rights of action arise either in the debenture holders or in the trustee.

We shall not unduly extend this opinion by a more detailed examination of procedure in event of default. It is sufficient to state that insofar as the qualified or contingent right of action of a holder of a debenture or coupon under Sec. 1 is concerned, and insofar as such right con-

cerns maturity of debenture or coupons, that such maturity would mean accelerated maturity and not normal maturity by mere passage of time.

We are of the opinion that *Paragraph A* applies solely to normal maturity and when under its provisions a debenture or coupon has normally matured, the absolute and unconditional right exists in the holder to enforce payment, without regard to the action of the trustee or of other debenture or coupon holders.

This is the exact holding in *Bullowa v. Thermoid Company,* 114 *N. J. L.* 205, 176 *A.* 596, in which the Court of Errors and Appeals of New Jersey, in an elaborate opinion, unanimously reached the same conclusion as herein reached, where the indenture construed was almost exactly similar to the present one.

In *Mermelstein v. Thermoid Company,* (3 *Cir.*) 85 *F.* 2d 913, the Circuit Court of Appeals considered the same indenture involved in the New Jersey case and unanimously approved the decision of that court.

Judgment will be entered in favor of the plaintiff for $450.