In the Matter of The COMMUNITY MEDICAL CENTER a/k/a All Souls' Hospital, Debtor,

The Community Medical Center a/k/a All Souls Hospital, Debtor, Appellant.

No. 79–2114.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Feb. 11, 1980.

Decided June 19, 1980.

Clifford W. Starrett, Schenck, Price, Smith & King, Morristown, N. J., for debtor-appellant.

Philip B. Papier, Jr., A Professional Corp., Princeton, N. J., for claimant-appellee.

Before ALDISERT, WEIS and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

In this appeal from the allowance of a claim in a bankruptcy proceeding, we must pass upon the proper measure of damages for breach of an executory contract. Although charges would normally be assessed on the basis of services provided, the agreement in this case also contained a minimum monthly charge. We conclude that the debtor could satisfy its obligation by tendering the minimum monthly payment and this establishes the proper measure of damages. Accordingly, the district court erred in utilizing the anticipated profits, a greater amount, in valuing the damages. We therefore vacate the order with directions to substitute the lesser total.

The Community Medical Center filed a petition for an arrangement under Chapter XI of the Bankruptcy Act. In the course of the proceedings, the debtor sought to reduce a claim for $71,472.00 filed by the claimant, InfoMed, as a result of the rejection of their executory contract. The bankruptcy judge reduced the claim to $56,762.81, and the district court affirmed.

The record establishes that in September 1977, the debtor signed a three-year contract to purchase data processing services from InfoMed. The claimant leased the required machines from the manufacturer and installed them in the medical center. This equipment was connected to a large, central computer on InfoMed's premises that serviced the needs of its customers, including the debtor. In addition to providing the equipment, InfoMed maintained the data processing units, trained the debtor's personnel to operate them, and furnished programming services.

The data processing was used by the medical center to prepare such matters as patient billing, financial reports, payrolls, tax reports, daily census reports, and other statistical data necessary for the operation of a modern hospital. Charges to the debtor were computed on the basis of several variables, such as number of in-patient days, out-patient visits, and payroll checks written. The contract was on a form prepared by InfoMed, and under the terms and conditions, which appeared on the back of the agreement, there was language stating, "Charges are a minimum of $1500 per

month, starting with the delivery of the items in the Equipment Schedule . . . . Processing charges are based on the Customer's actual number of transactions, as stated in the processing charges section of this Agreement."

The bankruptcy judge found that InfoMed provided the services until July 31, 1978, when the contract was rejected. To that point, the average monthly billings had been $3,411.45. The time remaining under the contract was 24.326 months,[1] and the total anticipated billings for the remainder of the contract term was $82,066.93 (24.326 months × $3,411.45).[2] From this amount the bankruptcy judge deducted $22,939.00, representing savings in rental fees and other costs that InfoMed could avoid by not completing its performance under the contract. Another discount of $2,365.12 for early payment was allowed, making the total claim $56,762.81.

In the proceedings before the bankruptcy judge, the debtor contended either that the reductions should have been greater than those ultimately allowed or that the claim should have been limited to $1500 per month, the minimum charge stated in the contract. The bankruptcy judge did not discuss the minimum charge contention, stating simply that "the rejection of an executory contract is a breach of contract giving rise to the contractual measure of damages." On appeal, the district judge found "no error in the method or in the calculation" utilized by the bankruptcy judge and affirmed the order.

In this court, the debtor renews its contention that the damages should be computed on the basis of the $1500 minimum charge provision. Accepting the factual findings of the bankruptcy judge, the debtor nevertheless argues that the agreement was a contract for alternative performances. InfoMed, however, asserts that the controversy is a factual one, and that the

allowance of the claim did no more than place the creditor in the position it would have been had the contract been fulfilled.

The agreement provides that it be interpreted under the law of New Jersey and the parties have proceeded in accordance with that understanding. New Jersey follows several general rules in the construction of contracts. The most fair and reasonable interpretation imputing the least hardship on either of the contracting parties should be adopted so that neither will have an unfair or unreasonable advantage over the other. *Tessmar v. Grosner*, 23 N.J. 193, 201, 128 A.2d 467, 471 (1957). But the court will not make a different or better contract than the parties themselves have seen fit to enter into, and all parts of the writing will be given effect if possible. *Washington Construction Co. v. Spinella*, 8 N.J. 212, 217–18, 84 A.2d 617, 619 (1951). Finally, where there is ambiguity, the words are construed against the drafter. *Bullowa v. Thermoid Co.*, 114 N.J.L. 205, 215, 176 A. 596, 602 (1935).

Absent the provision for a minimum monthly payment, it is clear that the formula utilized by the bankruptcy judge would be correct. Where profits are anticipated from the performance of an executory contract, damages in the event of a breach consist of the total amount to be received, less any expenses, excluding fixed overhead, saved by the plaintiff by not being required to complete his part of the agreement. *See Buono Sales, Inc. v. Chrysler Motor Corp.*, 449 F.2d 715, 719–20 (3d Cir. 1971); *Apex Metal Stamping Co. v. Alexander & Sawyer, Inc.*, 48 N.J.Super. 476, 484–86, 138 A.2d 568, 572–73 (App.Div. 1958).

In this case, however, there is another consideration—the provision for minimum monthly payments—which presents additional issues. The questions that must

1. After the debtor terminated the contract, InfoMed supplied services for one month to a successor hospital that had taken over the medical center. It is conceded that no claim was due for that month.

2. This calculation is erroneous, since $3,411.45 × 24.326 = $82,986.93, not $82,066.93. Because of our disposition, however, this error is of no consequence to this appeal.

be answered are whether the contract constitutes an agreement for alternative performances and, if so, whether that would alter the amount of the claim allowed by the district court.

In an alternative contract, either one of two performances may be given by the promisor and received by the promisee as the agreed exchange for the return performance by the promisee. This may be so even though one of the alternative performances is the payment of a fixed sum of money—that fact alone does not make the contract one for single performance with a liquidated damage provision for a breach. 5 A. Corbin, Contracts § 1082 (1964). If "either alternative operates as a complete discharge of the promisor's duty and prevents any further remedy against him," the agreement may be viewed as an alternative contract. *Id.* § 1070, at 397; *accord*, 5 S. Williston, A Treatise on the Law of Contracts § 781 (3d ed. 1961).

Although most instances of alternative contracts involve the payment of money as an alternative to actual conduct in carrying out the terms of an agreement, there are situations in which both choices require the payment of money. *See, e.g., Hughes v. Hughes*, 162 Ky. 505, 513–16, 172 S.W. 960, 964–65 (1915). Such is the case here, where both elections consisted of payment of money, but in differing amounts. The debtor agreed to pay for the value of data processing received from InfoMed on a monthly basis for the three-year term. It had an option, however. If the debtor chose not to use the equipment at all during the given month, or to an extent valued at less than $1500, then the price for its performance would be the latter sum.

The provision for a minimum charge provided InfoMed with some protection, since it established a fixed monthly sum to be due, an amount of income it could anticipate from the debtor on a regular basis. And although it was somewhat burdensome to the debtor, it was not unfair given the obligations InfoMed had to assume under long-term leases to obtain data processing units and the expenditures necessary for installation and removal of the equipment. The $1500 was simply consideration for the debtor's right to insist upon the tendering of services by InfoMed at any time.

It may be argued that, properly construed, the minimum payment provision is a liquidated damage clause, which does not give a promisor alternative modes of performance. *See Nolan v. Kirchner*, 98 N.J.Eq. 452, 453–54, 131 A. 104, 105 (1925); *Crane v. Peer*, 43 N.J.Eq. 553, 556–63, 4 A. 72, 74–79 (1888); 5 A. Corbin, Contracts § 1070 (1964); 5 S. Williston, A Treatise on the Law of Contracts § 781 (3d ed. 1961). But one of the principal characteristics of a liquidated damages clause is that it is agreed upon in advance by the parties as a remedy for breach.

The InfoMed form does not, in any way, limit the minimum payment to application only in the event of breach, but rather invokes it in any month in which the costs of the desired services were less than $1500. The clause, fairly interpreted, looks more to a continuance of the relationship between InfoMed and the debtor rather than termination. Construction of the wording in this fashion is consistent with the admonition of the New Jersey courts that "the primary object of [alternative] contracts . . . is deemed to be performance, not nonperformance." *Nolan v. Kirchner, supra* at 453, 131 A. at 105. Consequently, the minimum payment arrangement should not be considered a liquidated damages provision; the only reasonable interpretation is that the contract permits alternative performances.

The debtor could have chosen to keep the contract in effect by paying $1500 monthly until the expiration of the three-year period. Instead it elected to terminate the agreement, thus incurring liability in damages for the breach. Our research on the damages provided by New Jersey law has yielded no state cases directly on point, and therefore we must look to the general law to determine the proper measure.

Section 344 of the Restatement of Contracts provides that damages in the "case of

breach without an election [of alternatives], [shall be] in accordance with the alternative that will result in the smallest recovery." Professor Williston expresses the measure as "the value of the alternative least onerous to the defendant." 11 S. Williston, A Treatise on the Law of Contracts § 1407, at 593 (3d ed. 1968) (footnote omitted). Similarly, Professor Dobbs states the test as "[w]hen the contract is found to be an alternative contract, damages, in the absence of an election of the alternatives by the breaching party, are based on the alternative least expensive to him." D. Dobbs, Handbook on the Law of Remedies § 12.5, at 825 (1973) (footnote omitted). *Branhill Realty Co. v. Montgomery Ward & Co.*, 60 F.2d 922 (2d Cir. 1932), and *Walker v. Hayes*, 100 N.H. 90, 120 A.2d 140 (1956), are examples of cases following this general rule.

There are other cases to the contrary, such as *Prudential Insurance Co. of America v. Faulkner*, 68 F.2d 676 (10th Cir. 1934), which take the position that if the promisor has not exercised an alternative, the promisee may choose the one most favorable to him. This view, however, has garnered scholarly approval in only one situation—where the contract itself contains language granting the promisee the right to elect remedies. In this case, the contract gives no support to the retention of a choice by InfoMed. It was bound to furnish the services at fixed rates—it could not choose to cease this performance without breaching the contract.

In the absence of intimations to the contrary we expect that New Jersey would follow the general law and allow recovery only for the lesser alternative. Applying that rule, the claim based on $1500 per month for the 24.326 months remaining in the term yields an award of $36,489.00.

■ One final matter merits consideration. Debtor contends in this court that the amount that InfoMed saved by not being required to complete the contract, $22,-939.00, should be deducted from this new award. This argument is inconsistent with the position the debtor took in the district court. There, the reduction because of savings to InfoMed was submitted only in connection with its claim for lost profits; on the alternative theory relied upon by the debtor—the minimum monthly payments theory we accept here—debtor asked only that the claim be reduced to $36,489.00. Debtor's Proposed Finding of Fact 16(a). We are therefore not inclined to accept debtor's shift in its position at this stage, finding as we do no inequity in holding debtor to what it had asserted in the district court.[3] In any event, however, the contract does not give any indication that debtor would have the option to pay less than $1500 per month if it chose to utilize the alternative form of performance.

Accordingly, the order of the district court will be vacated and the matter will be remanded for the entry of an order establishing the claim of InfoMed in the amount of $36,489.00.[4]

---

**3.** Neither in this court nor in the district court did debtor assert a deduction for early payment in the event that the minimum monthly payment was used as a measure of damages. Consequently, we will not compute such a reduction at this point.

**4.** In its brief, debtor argues that even if the agreement is considered a requirements contract under Article Two of the Uniform Commercial Code, the bankruptcy judge's decision was erroneous. We do not consider this case to be within the ambit of the U.C.C. Although some leasing arrangements have been viewed as the practical equivalent of sales, *see e.g., Sawyer v. Pioneer Leasing Corp.*, 244 Ark. 943, 428 S.W.2d 46 (1968); *Atlas Indus., Inc. v.*

*National Cash Register Co.*, 216 Kan. 213, 531 P.2d 41 (1975); *see generally* J. White & R. Summers, Uniform Commercial Code, § 22–3, at 762 (1972), those circumstances are not present here. Two facts in particular compel this conclusion. First, there was no sale of the data processing equipment by InfoMed because it did not own the machines, but only leased them. Second, the debtor was never given the opportunity to become the owner by purchasing the leased equipment at the end of the lease term for a nominal sum. In short, because the contractual transaction here was for the sale of services, not goods, the Uniform Commercial Code does not apply.