JEAN D. KAMPF, PLAINTIFF-RESPONDENT, v. THE FRANKLIN LIFE INSURANCE COMPANY, SPRING-FIELD, ILLINOIS, A CORPORATION OF THE STATE OF ILLINOIS, DEFENDANT-APPELLANT.

Argued January 11 and 12, 1960—Reargued April 4, 1960—
Decided June 13, 1960.

38

*Mr. Nicholas Conover English* argued the cause for defendant-appellant (*Messrs. McCarter and English,* attorneys; *Mr. Nicholas Conover English,* of counsel).

*Mr. Max Klayman* argued the cause for plaintiff-respondent (*Mr. Clive S. Cummis,* of counsel and on the brief).

The opinion of the court was delivered by

SCHETTINO, J. This appeal is from a Superior Court, Chancery Division summary judgment in favor of the plaintiff on cross motions in an action brought by a beneficiary of a 20-year term life insurance policy. The trial court's opinion is reported at 56 *N. J. Super.* 185 (*Ch. Div.* 1959). We certified the matter on our own motion while the appeal was pending in the Appellate Division.

The case presents two issues for consideration. The first involves the determination of the date on which the contract of insurance required that the crucial premium payment had to be made. After argument on that point, we requested reargument and briefs on the question of whether the payment of that premium was excused under the waiver of premium provision of the policy.

## I.

On September 24, 1956 defendant's agent delivered to the insured the policy dated September 21, 1956 for which he

had applied earlier in that month and under which he had agreed to make payments quarterly. He thereupon paid his initial quarterly premium.

The insured died on April 22, 1958 at which time it is alleged by defendant that the policy had lapsed because of the failure to pay the premium due on March 21 of that year before the expiration of the 31-day grace period provided for in the policy. The grace period provision states that the policy would remain in force and that if death occurred within that period, the amount of the premium, if unpaid, would be deducted from the amount payable to the beneficiary.

The policy provides that the first premium was payable at the beginning of the first policy year and subsequent ones were payable on the quarterly anniversary of the first policy year's date which in this policy was stated to be September 21, 1956. The application for insurance which is expressly made a part of the policy provides that the policy shall not take effect until delivered to the insured and first payment has been made during insured's lifetime while in good health in which event "such policy shall be deemed effective as of the beginning of the first policy year as shown on such policy."

Defendant urges that the effective date is September 21, 1956—the date on which the policy was executed by its officers; that therefore the quarterly premium payment was due on March 21, 1958 and that the 31-day grace period ended on April 21, 1958. Thus, as the death occurred on April 22, 1958 the policy had already lapsed.

Plaintiff counters that the effective date was September 24, 1956, the date on which the policy was delivered by defendant's agent to the insured and the first premium paid, which date, under the contract, actually marked the beginning of insurance coverage; that the due date of the last premium was March 24, 1958 and therefore that the death occurred within the grace period which would have ended on April 24, 1958.

The trial court found an ambiguity in the insurance contract. It referred to the rule of construction that when a contract contains ambiguous language, it will be construed against the party who drew it and held that "The more liberal rule should be called into play in order to avoid the forfeiture which the Court of Chancery seeks to avoid, and to do so is also in accordance with the 'almost unanimous holding of all courts that insurance contracts must be liberally construed in favor of a policyholder or beneficiary thereof, wherever possible, and strictly construed against the insurer in order to afford the protection which the insured was endeavoring to secure when he applied for the insurance.'" Among the authorities cited were: *Snyder v. Dwelling House Insurance Co.*, 59 *N. J. L.* 544 (*E. & A.* 1896); *Yannuzzi v. United States Casualty Co.*, 19 *N. J.* 201, 207 (1955); *Schneider v. New Amsterdam Cas. Co.*, 22 *N. J. Super.* 238, 243 (*App. Div.* 1952); 13 *Appleman, Insurance Law & Practice* (1943), § 7401, *p.* 50; 1 *Couch, Insurance 2d* (*Anderson ed.* 1959), § 15:73, *p.* 776. It found for plaintiff.

We understand that life insurance is offered on two bases here pertinent. The applicant may submit the premium with his application and if the policy issues, it is dated as of the date of the application and coverage is provided retroactively to that date. Alternatively, the applicant may omit to submit the premium with the application, in which event the policy bears the date of its actual issuance, even though by virtue of other provisions the insurance does not become effective until the policy is delivered and the first premium is paid during the life and good health of the assured. The second procedure was the one here used, and the time interval between the date fixed in the policy (the date of issuance by the company) and the date of actual insurance coverage (the date the first premium is paid) represents the margin of success or failure of the claimant.

If the time for payment of subsequent premiums is measured from the date the policy bears, then obviously the

insured has received no protection for the time period between that date and the date on which the insurance coverage in fact began, notwithstanding that he paid a premium for that interval. On the other hand, an insured may profit by the "predating" in other respects, to wit, the running time under the incontestability clause (*State Mut. Life Assur. Co. v. Stapp*, 72 *F.* 2d 142, 145–146 (7 *Cir.* 1934)) or suicide clause. *Schwartz v. Northern Life Ins. Co.*, 25 *F.* 2d 555 (9 *Cir.* 1928), *certiorari* denied 278 *U. S.* 628, 49 *S. Ct.* 29, 73 *L. Ed.* 547 (1928).

█ Defendant urges, and we see no basis to reject its position, that neither statute nor case law forbids the parties to agree that the time for premium payment shall be measured from the date of actual issuance of the policy rather than the date of effective coverage. Defendant stresses the practical problems of the insurance industry and argues the alternative plans we described above are the only feasible approaches to the immediate problem. It argues that if, where the premium does not accompany the application, the dates for subsequent premium payments must be computed from the date of actual coverage (*i. e.,* the date the first premium is paid), there would be costly administrative problems involved in ascertaining the precise date and correcting the internal records and calculations. Adverting to the compensatory advantages to the assured from the use of the fixed policy date, described above, and these practical problems, defendant urges the contract of the parties offends no policy of law and should be enforced precisely according to its terms. We agree, if the contract is free of ambiguity in this respect, and hence the issue is whether there is room for doubt on the face of the agreement.

We think the contract clearly requires the later premium dates to be measured by the date of issuance stated in the policy, and accordingly defendant is entitled to prevail on this facet of the case.

██ The problem here is one of simple contract law. As was noted by Judge Parker in *Sellars v. Continental Life Ins. Co.*, 30 *F*. 2d 42, 45 (4 *Cir.* 1929) "Courts cannot make contracts for parties. They can only enforce the contracts which the parties themselves have made." When the terms of an insurance contract are clear, it is the function of a court to enforce it as written and not to make a better contract for either of the parties. *Kupfersmith v. Delaware Ins. Co.*, 84 *N. J. L.* 271, 275 (*E. & A.* 1913); *James v. Federal Insurance Co.*, 5 *N. J.* 21, 24 (1950). The parties are entitled to make their own contracts. *McCampbell v. New York Life Ins. Co.*, 288 *F.* 465, 469 (5 *Cir.* 1923), *certiorari* denied 262 *U. S.* 759, 43 *S. Ct.* 705, 67 *L. Ed.* 1219 (1923). Absent statutory prohibitions, an insurance company has the right to impose whatever conditions it desires prior to assuming its obligations and such provisions should be construed in accordance with the language used. *Schneider, supra.* This rule applies with equal force to the selection of the dates on which premium payments are to be made. The parties may agree upon such dates and where the time of payment is thus specified by the terms of the policy, those terms control and the date so fixed is binding on both parties. 14 *Appleman, op. cit., supra*, § 7953, *p.* 165.

But, here, the narrow basic issue is when were premium payments due? This policy is clear for it provides that

"This insurance is granted in consideration of the application herefor and of the payment in advance of the premiums as herein provided. *The first premium* in the amount specified on the first page, *is payable at the beginning of the first policy year and subsequent premiums are payable on the anniversary of said date* in every year thereafter until premiums have been paid for the period specified on the first page." (Emphasis added)

The policy provided for an option which the insured accepted to pay the premium quarter-annually. Whatever reference to this date may mean in other contexts, it is clear that "the beginning of the first policy year" is the date which

fixes the time for the payment of future premiums. Our sole determination in the present matter is that the parties did fix the date when the first premium was payable which in turn determined the due date of each subsequent premium payment. 14 *Appleman, op. cit., supra,* § 7953, *p.* 165. The policy clearly stated that "First Policy Year Begins September 21, 1956."

 When a policy, although conditioned to take effect on the payment of the first premium, expressly specifies the date from which the premium period is to be computed and makes that date the determining factor which fixes the day on which the future premiums are due and payable, such date controls regardless of when the policy is delivered and notwithstanding the policy reservation that the insurance is not effective until the policy is delivered and the first premium paid. *Pyramid Life Ins. Co. v. Williams,* 221 *Ark.* 74, 251 *S. W. 2d* 1010 (*Sup. Ct.* 1952); *Pace v. New York Life Ins. Co.,* 219 *N. C.* 451, 14 *S. E. 2d* 411, 414 (*Sup. Ct.* 1941). This statement is referred to as "the general rule" in the Annotation: "Date from which life insurance premium periods are to be computed," 169 *A. L. R.* 290 (1947).

 We see no reason why a simple, clear contract provision pertaining to time of payment should not be enforced pursuant to the parties' agreement. *Swann v. Atlantic Life Ins. Co.,* 156 *Va.* 852, 159 *S. E.* 192, 195 (*Sup. Ct. App.* 1931). Our determination does not resolve conflicts which might arise in other fact patterns if the *effective date* be in issue. We therefore hold that the grace period expired on April 21, 1958, one day before the insured's death.

## II.

We next consider whether payment was here excused. The supplemental agreement to the policy contains a waiver of premium provision for which an extra charge was made. It provides that if, after the first premium payment is

made and before there is a default in any following payment, the insured furnishes the insurance company at its home office proof of total disability resulting from bodily injury or disease, the insurance company waives premium payments which become "due * * * after the commencement of such disability"; that an insured is totally disabled when he "is and will be continuously and wholly prevented thereby from performing any work or transacting any business for compensation or profit and that such disability has already continued uninterrupted for a period of at least six months (such disability of such duration being treated as permanent only for the purpose of determining the commencement of the benefit hereunder) * * *." The agreement attempts to restrict the waiver provision by stating "provided, however, that no premium shall be waived, the due date of which is more than six months prior to the date of receipt * * * of written notice of claim hereunder." It further provides that if the insured has defaulted in a premium payment without having given prior notice of disability, payment of that premium will nevertheless be waived if the insured's disability occurred before the due date or before expiration of the subsequent grace period and if the insured presents notice of his claim within six months of the due date. The notice of claim must be presented during the insured's lifetime and during continuance of his disability. But, failure to supply notice within such time does not invalidate the claim "if it shall be shown that it was not reasonably possible to give such notice within such times and that such notice was given as soon as reasonably possible."

For the reargument, the parties stipulated as part of the record before us the hospital records, copies of letters between plaintiff's attorney and defendant, notice of death of the insured dated April 24, 1958 and furnished to defendant's home office by its local agent and a copy of the death certificate. A statement of the insured's treating physician was not agreed to by defendant so that it is not before us.

From the hospital records we note that decedent was admitted to the hospital on April 21, 1958; that the diagnosis was "Varicella and Poss. Pneumonia/chgd to Varicella"; that the duration of the disease before admission was five days and that the duration of treatment was two days as he died at 12:35 P. M. on April 22, 1958. Twenty minutes before, he was found outstretched on the floor beside his bed which was covered with an oxygen tent.

For the insured to have come within the disability-waiver of premiums provision, it is incumbent upon plaintiff to show that such disability existed. Where as here death occurred beyond the grace period, plaintiff must show that the total disability started before the end of said period. The policy defines total disability as one resulting from bodily injury or disease the consequence of which is "that the Insured is and will be continuously and wholly prevented thereby from performing any work or transacting any business for compensation or profit." Under this definition it is not necessary that the insured have been rendered completely helpless during the grace period. It is sufficient that the insured was "unable to perform all the substantial and material acts necessary to the prosecution of his business or occupation in a customary and usual manner." *Fannick v. Metropolitan Life Ins. Co.*, 34 *N. J. Super.* 556, 559 (*App. Div.* 1955). *Cf. Dittmar v. Continental Cas. Co.*, 29 *N. J.* 532, 543 (1959). As this issue was not tried below and the stipulation before us is incomplete, the cause must be remanded for trial.

Here, the parties stipulated that the fatal illness occurred within the grace period and we found above that death occurred after that period. (Of course, defendant does not stipulate that the fatal illness was a "disability" as defined in the policy.) Fact patterns similar to the present one have arisen in many jurisdictions. In *Commonwealth Life Ins. Co. v. Francis*, 278 *Ky.* 343, 128 *S. W. 2d* 742 (*Ct. App.* 1939), the onset of the illness occurred after the due date of the premium but within the grace period and death

occurred after the grace period ended. In construing a policy provision similar to the one before us, in order to determine whether the insured was totally and permanently disabled in view of the fact that death had occurred before the end of the four-month period during which the provision apparently required that the disability must continue, the court stated that (128 *S. W. 2d,* at *page* 744):

"* * * The obvious purpose of the language of the policy that such disability must have continued for a period of at least four months is that the company might determine and establish definitely that the disability was permanent and total. This construction is justified by the parenthetical language contained in the rider, 'such disability of such duration being deemed to be permanent only for the purpose of determining the commencement of liability hereunder.' "

The court also reasoned that as death was the most total and permanent of all disabilities, the requisite disability was present at the end of the required period. As to the same point the Supreme Court of Illinois reviewed numerous authorities in *Lenkutis v. New York Life Ins. Co.,* 374 *Ill.* 136, 28 *N. E. 2d* 86 (*Sup. Ct.* 1940) and stated that (28 *N. E. 2d,* at *pages* 90–91):

"We hold, in consonance with the authorities cited, that the total and permanent disability provisions of the policy before us waiving the payment of premiums accrued upon the commencement of the insured's disability, and conversely, the policy did not require that his disability continue for a period of six months as a condition precedent to the waiver. Our conclusion is confirmed by the parenthetical provision 'such total disability of such duration being presumed to be permanent only for the purpose of determining the liability hereunder,' tending to demonstrate that the six-months' period is the time fixed for the purpose of determining presumptive permanency of the disability in order to aid the insured in proving its permanency."

*Swann v. Atlantic Life Ins. Co., supra* (159 *S. E.,* at *page* 195) deals with the requirements that proof and notice of disability be furnished to the company and the court there

stressed the coverage bargained for in the waiver of premiums provision as follows:

"The insured could not present proofs before his disability, and he certainly could not present proofs after he became mentally and physically incapable of doing so. It would be unreasonable to say that he should present proofs to the company if he were insane or unconscious. Such a construction of the policy would render it of no value to the insured in such a case, although he may have been influenced thereby to purchase the insurance, and has paid for the right to have the premiums waived.
* * * When the disability of the insured occurred while the policy was in force, he was entitled to have his premiums waived until his death, for his disability continued until his death. He had paid for this right, and to say that he should lose the benefit of his policy because he failed through mental or physical incapacity to present proofs would be harsh and unreasonable under the circumstances.
We conclude that the giving of notice and proof of disability was not a condition precedent to the right to a waiver of premiums where the insured through no fault of his own has become, while the policy is in force, mentally and physically incapable of giving the notice or furnishing the proofs to the company, and that the issue raised by the replication of the plaintiff should have been submitted to a jury."

Further we note that in *Minnesota Mut. Life Ins. Co. v. Marshall*, 29 *F.* 2d 977, 978 (8 *Cir.* 1928), *certiorari* denied 279 *U. S.* 851, 49 *S. Ct.* 347, 73 *L. Ed.* 994 (1929) the court announced the general standard to be applied to such provisions:

"However much the legal mind may differ as to the meaning of these provisions, the ordinary layman would construe them to mean that, in the event he became disabled before his premium fell due, his insurance would be continued until his disability was removed or until his death. That is the natural and reasonable construction to be placed upon the language used in this policy. Any other construction, to my mind, would be contrary to the full purpose of the contract and deprive the insured of one of the principal benefits of his policy. The right of the insured to have his premiums discontinued during disability is one that he had paid for. To make its operation depend upon the time of proof of disability, and not upon the time of disability itself, which was the real thing that he was protecting himself against, renders the provision of the policy under construction inoperative and the right of no value.

\* \* \* To give the insured the full benefit of his policy, and carry out the intention which was doubtless in the minds of the contracting parties when the policy was written, his policy should not be allowed to forfeit where his disability occurs during the grace period of his policy and continues until his death. Any other construction would be a harsh one and deprive him of a right for which he had paid the insurance company, and which he could only enjoy by employing in advance some agent to protect for him. Why so construe this disability clause in insurance policies as to make it worthless in many cases?"

 The result reached in these cases is sound for, as we view the matter, the existence and not the proof of disability fixes the insurer's liability. *Mutual Life Ins. Co. v. Morris,* 191 *Ark.* 88, 83 *S. W. 2d* 842 (*Sup. Ct.* 1935). Plaintiff is not barred from recovering because death intervened before the insured had been disabled for six months for virtually the same parenthetical clause is present in this policy as in the ones construed in *Commonwealth Life Ins. Co. v. Francis, supra,* and in *Lenkutis, supra.* In accord with those opinions we hold that this clause removes all doubt that the six month requirement as to duration could not have been designed for any other purpose than to insure the requisite permanency of disability.

 We also hold that plaintiff is not necessarily prevented from availing herself of the benefits of the waiver of premiums provision because notice and proof of disability were not furnished during the deceased's lifetime for the reasons stated above in *Swann, supra,* and *Minnesota Mut. Life Ins. Co., supra.*

Even the cases which have construed the notice requirements to be conditions precedent have held that where the condition of the insured makes it impossible for him to give notice, the requirements are dispensed with until it is possible for such notice to be given. See, for example, *McCoy v. New York Life Ins. Co.,* 219 *Iowa* 514, 258 *N. W.* 320 (*Sup. Ct.* 1935).

If disability is found to have existed within the grace period, it will be sufficient under the terms of the policy

if notice of the disability be given within a reasonable time and the fact that notice was received after the death of the insured is immaterial. *National Standard Life Ins. Co. v. Smith,* 75 *S. W. 2d* 1102, 1104 (*Tex. Civ. App.* 1934). In determining what was a reasonable time within which notice must have been given by the beneficiary-wife or someone acting in her behalf, her state of mind and knowledge of the requirements of the policy as to furnishing such information should be considered. *Reliance Life Ins. Co. of Pittsburgh, Pa. v. Lynch,* 144 *Fla.* 50, 197 *So.* 723, 725 (*Sup. Ct.* 1940).

Defendant contends that plaintiff failed to furnish notice of disability, that no valid excuse for failure to give notice was submitted by plaintiff and that, if given, notice was not given as soon as was reasonably possible. These issues and any question of waiver can be determined only upon remand.

Reversed and remanded for action not inconsistent with this opinion with costs to abide the outcome of the retrial.

*For reversal*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—7.

*For affirmance*—None.