**Miriam SEIDENBERG, Plaintiff,**

v.

**The MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Defendant.**

**Civil Action No. 95–5946(AJL).**

United States District Court, D. New Jersey.

Nov. 26, 1996.

---

George B. Gelman, Ross & Hardies, Somerset, NJ, for Plaintiff.

B. John Pendleton, McCarter & English, Newark, NJ, for Defendant.

OPINION

LECHNER, District Judge.

This is a breach of contract action brought by plaintiff, Miriam Seidenberg ("Miriam Seidenberg"), against defendant, the Mutual Life Insurance Company of New York ("MONY"). Jurisdiction is alleged pursuant to 28 U.S.C. § 1332(a)(1) and appears to be proper.

Miriam Seidenberg alleges MONY wrongfully and deliberately denied her benefits of a life insurance policy that was issued by MONY to her daughter, Phyllis Seidenberg ("Phyllis Seidenberg"). Miriam Seidenberg seeks recovery of the face value of the life insurance policy, compensatory and punitive damages, interest, costs and attorney's fees.

On 19 October 1995, Miriam Seidenberg filed a two count complaint (the "Complaint"), in the Superior Court of New Jersey, Law Division, Middlesex County, alleging breach of the terms of an insurance policy and breach of the covenant of good faith and fair dealing and an unfair trade practice in violation of N.J.S.A. 17B:30-13.1. On 21 November 1995, MONY removed the matter to this court.

Miriam Seidenberg and MONY submitted cross motions for summary judgment (the "Seidenberg Motion for Summary Judgment Motion" and the "MONY Motion for Summary Judgment").[1] The parties also submitted a joint stipulation of facts, with Exhibits A through O attached (the "Joint Stipulation of Facts"). For the reasons set forth below, the Seidenberg Motion for Summary Judgment is denied; the MONY Motion for Summary Judgment is granted.

*Facts*

A. *The Parties*

1. *Miriam Seidenberg*

Miriam Seidenberg, a resident of New Jersey, is the mother of Phyllis Seidenberg, the deceased. Joint Stipulation of Facts, ¶ 1. Miriam Seidenberg is the primary beneficiary of a life insurance policy issued by MONY to Phyllis Seidenberg on 5 December 1983. *Id.*

2. *MONY*

MONY, is a mutual life insurance corporation organized under the laws of New York, with its principal place of business in New York, New York. *Id.,* ¶ 2. MONY engages in selling life insurance policies in the State of New Jersey. *Id.,* ¶ 6.

B. *Background*

Phyllis Seidenberg was a chiropractor with her practice located in Metuchen, New Jersey. Joint Stipulation of Facts, ¶ 7. On 10 December 1982, MONY issued an Overhead Expense Policy, number 82X1-30-84 (the "Overhead Expense Policy") to Phyllis Seidenberg. *Id.,* ¶ 14. Phyllis Seidenberg paid the annual premiums for the Overhead Expense Policy in the amount of $288.00 up through and including the premium due on 10 December 1993. *See* Payment History for Overhead Expense Policy, attached as Exhibit C to Joint Stipulation of Facts.

On 5 December 1983, Phyllis Seidenberg purchased a whole life insurance policy, number 1148-70-06 (the "Insurance Policy"), issued by MONY. Joint Stipulation of Facts, ¶ 1. The Insurance Policy lists a face value of $250,000, payable upon proof of death of the insured. Insurance Policy at 5, attached as Exhibit A to the Joint Stipulation of Facts. The Insurance Policy required Phyllis Seidenberg to make annual premium payments of $5,130.00 on 5 December of each year. Insurance Policy at 5. Phyllis Seidenberg paid all premiums in the amount of $5,130.00 due under the Insurance Policy from 5 December 1983 until, but not including, 5 December 1993. Joint Stipulation of Facts, ¶¶ 10–11.

Phyllis Seidenberg also purchased an optional Waiver of Premium (the "Waiver of Premium") as an additional benefit rider to the Insurance Policy. Joint Stipulation of Facts, ¶ 8. The Waiver of Premium operates to waive payment of the insurance premium if the purchaser incurs a total disability that "continues with no interruption during the [i]nsured's lifetime for [six] months." Insurance Policy at 15.

1. Miriam Seidenberg submitted: Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment ("Seidenberg Brief"); Plaintiff's Reply Memorandum of Law ("Seidenberg Reply"); Plaintiff's Appendix in Support of Summary Judgment ("Seidenberg Appendix"), with Exhibits 1 to 4 attached.

MONY submitted: The Mutual Life Insurance Company's Brief in Support of Summary Judgment ("MONY Brief"); The Mutual Life Insurance Company's Reply Brief in Support of Summary Judgment ("MONY Reply"); Affidavit of Michael Confusione ("Confusione Affidavit"), with Exhibit A, attached.

On 20 January 1994, Phyllis Seidenberg died from ovarian carcinoma at the age of forty-three. Joint Stipulation of Facts, ¶ 22. She was survived by her husband, Miroslav Spireng ("Spireng"), her mother, Miriam Seidenberg, and her brother, Robert Seidenberg ("Robert Seidenberg"). *See* 5 June 1995 Settlement Agreement between Spireng and the Estate of Phyllis Seidenberg (the "Settlement Agreement"), attached as Exhibit K to Joint Stipulation of Facts.[2]

### C. *Medical History*

On 1 June 1993, Phyllis Seidenberg sought treatment from a medical doctor for persistent pain in her pelvic area. Complaint, ¶ 9. A pelvic scan performed on that date revealed Phyllis Seidenberg suffered from ovarian cysts, which were diagnosed as benign. *Id.*

On 7 October 1993, Phyllis Seidenberg again sought medical treatment for pain in the pelvic region. *Id.*, ¶ 10. Tests performed between 20 October 1993 and 22 October 1993 revealed the ovarian cysts were malignant. *Id.* She was admitted to Lenox Hill Hospital for further testing on 29 October 1993, where the presence of a large malignant ovarian tumor was confirmed. *Id.*

On 1 November 1993, Phyllis Seidenberg closed her chiropractic offices and ceased to practice her profession in order to devote herself to treatment of her pelvic carcinoma. Joint Stipulation of Facts, ¶ 13.

On 15 November 1993, Phyllis Seidenberg filed a claim of disability on her Overhead Expense Policy (the "Overhead Expense Claim"). Joint Stipulation of Facts, ¶ 15. The Overhead Expense Claim was acknowledged in a letter, dated 1 December 1993, from MONY's Senior Disability Specialist, Ray Hahn (the "1 December 1993 Letter"). 1 December 1993 Letter, attached as Exhibit E to the Joint Stipulation of Facts. As instructed by the 1 December 1993 Letter, Phyllis Seidenberg completed and submitted an "Insured's Disability/Incapacity Statement" to MONY in support of her Overhead Expense Claim. Joint Stipulation of Facts, ¶ 18; Insured's Disability/Incapacity Statement, attached as Exhibit F to the Joint Stipulation of Facts.

On 3 November 1993, Phyllis Seidenberg traveled to Mexico to seek medical treatment. Complaint, ¶ 11. On or about 10 November 1993, she returned to the United States and sought further medical treatment. *Id.*, ¶ 12. Exploratory surgery was performed. *Id.* Phyllis Seidenberg's condition was diagnosed as inoperable. *Id.*

The value of the assets belonging in the Estate of Phyllis Seidenberg was included in a listing attached to the Settlement Agreement. *See* Settlement Agreement. Item number 20 in the asset list states the face value of the MONY Insurance Policy to be $105,795.

This information is relevant to two additional arguments offered by MONY in support of its summary judgment motion. Citing the entire controversy doctrine, MONY argues that Miriam Seidenberg failed to bring her claims against MONY in the state court action, and, therefore, is precluded from bringing this suit for full recovery of the Insurance Policy. MONY further argues Miriam Seidenberg is barred by the doctrine of judicial estoppel. MONY argues that because Miriam Seidenberg represented the value of the Insurance Policy to be $105,795 in the state court proceeding, she may not now claim its value to be $250,000 in the instant proceeding. MONY Brief at 12–19. These arguments are not addressed because the matter is resolved on other grounds.

---

2. On 3 February 1994, the Middlesex County Surrogate's Court issued Letters Testamentary to Miriam Seidenberg and Richard Seidenberg, pursuant to the Last Will and Testament of Phyllis Seidenberg (the "Seidenberg Will"). 6 May 1994 Complaint of Spireng ("Spireng Complaint"), attached as Exhibit K to Joint Stipulation of Facts, ¶ 6. The Seidenberg Will made no provision for Spireng.

On 6 May 1994, Spireng brought an action in the Superior Court of New Jersey, Middlesex County, Chancery Division ("Superior Court") seeking a one-third elective share of the augmented estate of Phyllis Seidenberg, pursuant to N.J.S.A. 3B:8–1 *et seq.* Spireng Complaint, ¶ 8. MONY was not a party to this action. As a result of the action filed by Spireng, Miriam Seidenberg and Richard Seidenberg, the beneficiaries under the Seidenberg Will, filed a settlement agreement with Spireng in the Superior Court. Joint Stipulation of Facts, ¶ 26; Settlement Agreement. In the Settlement Agreement, Spireng received $70,000.00 from the estate of Phyllis Seidenberg in exchange for relinquishing all future claims against the Estate of Phyllis Seidenberg. *Id.*, ¶ 1.

Miriam Seidenberg accompanied Phyllis Seidenberg to Mexico on 8 December 1993 for further medical treatment. Joint Stipulation of Facts, ¶ 19. They returned to the United States on or about 6 January 1994. *Id.*

On 16 January 1994, after a brief stay at her brother's home, Phyllis Seidenberg was admitted to Robert Wood Johnson University Hospital in New Brunswick, New Jersey. Joint Stipulation of Facts, ¶ 22. Phyllis Seidenberg died on 20 January 1994. *Id.*

### D. *Lapse of the Insurance Policy*

On 16 November 1993, MONY sent Phyllis Seidenberg its standard "Payment Due" Notice for the Insurance Policy premium, due on 5 December 1993 (the "5 December Payment"). *Id.*, ¶ 20; *see also* Payment Due Notice, attached as Exhibit G to the Joint Stipulation of Facts. When the 5 December Payment was not received, MONY sent a Notice of Lapse and Restoration Offer (the "Notice of Lapse") on 15 January 1994 to the chiropractic office of Phyllis Seidenberg, which was the address of record with MONY. *Id.*, ¶ 21.

MONY sent a final Notice of Policy Lapse ("Final Notice of Lapse") to the chiropractic office of Phyllis Seidenberg on 2 February 1994. *Id.*, ¶ 24. The Final Notice of Lapse indicated the Policy had lapsed from the $250,000 face value to the reduced, paid-up sum of $105,795. *Id.;* Final Notice of Lapse, attached as Exhibit I to Joint Stipulation of Facts. Prior to the onset of her illness in November 1993, Phyllis Seidenberg paid all annual premiums on the policy in timely fashion. *Id.*, ¶ 10.

### E. *Controversy*

From 1 November 1993 until her death on 20 January 1994, Phyllis Seidenberg was totally disabled as that term is defined in the Waiver of Premium provision. *Id.*, ¶ 23. Miriam Seidenberg now seeks to recover the full amount of the policy ($250,000) from MONY. MONY maintains that Miriam Seidenberg is only entitled to the "paid-up"

amount of the policy ($105,795), because the policy had lapsed and the final premium was not paid. Miriam Seidenberg argues that because Phyllis Seidenberg was disabled for approximately two and one-half months prior to her death, the Waiver of Premium operated to continue the policy in full effect. MONY argues that, in order for the Waiver of Premium to be effective, Phyllis Seidenberg must have been continuously disabled for a period of six months during her lifetime.[3]

### *Discussion*

#### A. *Standard of Review for Summary Judgment Motions*

To prevail on a motion for summary judgment, the moving party must establish "there is no genuine issue as to any material fact and that [it] is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The present task is to determine whether genuine issues of material fact exist and whether either party is entitled to judgment as a matter of law. A district court may not resolve factual disputes in a motion for summary judgment. *Linan–Faye Constr. Co. v. Housing Auth.*, 49 F.3d 915, 926–27 (3d Cir. 1995) ("at the summary judgment stage, 'the judge's function is not ... to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986)); *Desvi, Inc. v. Continental Ins. Co.*, 968 F.2d 307, 308 (3d Cir.1992) ("threshold inquiry is whether there are 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party'") (citations omitted).

In considering a motion for summary judgment, all evidence submitted must be viewed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Healey v. Southwood Psychiatric Hosp.*, 78

---

**3.** As will be discussed, the instant dispute is resolved on the grounds that Phyllis Seidenberg did not satisfy the conditions required to trigger the waiver of the premium payments. Accordingly, the other arguments presented by the parties are not addressed.

F.3d 128, 130–31 (3d Cir.1996); *General Ceramics Inc. v. Fireman's Fund Ins. Cos.*, 66 F.3d 647, 651 (3d Cir.1995); *Meyer v. Riegel Products Corp.*, 720 F.2d 303, 307 & n. 2 (3d Cir.1983) (the court must resolve "all inferences, doubts and issues of credibility ... against the moving party"), *cert. dismissed*, 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984). In the instant matter, both parties have moved for summary judgment. The parties have submitted a Joint Stipulation of Facts. The parties contend there are no genuine issues of material fact in dispute.

When the resolution of issues depends wholly upon the interpretation of specific statutory language and the applicable law, summary judgment is appropriate. *See Di-Biase v. SmithKline Beecham Corp.*, 48 F.3d 719, 724 (3d Cir.), *cert. denied*, ⸺ U.S. ⸺, 116 S.Ct. 306, 133 L.Ed.2d 210 (1995); *see also Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir.) ("summary judgment is proper where the facts are undisputed"), *cert. denied*, 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985); *Estate of Reddert*, 925 F.Supp. 261, 265 (D.N.J.1996).

Similarly, "where the terms of a contract are unambiguous their construction is a question of law appropriate for summary judgment." *W.B. v. Matula*, 67 F.3d 484, 497 (3d Cir.1995) (citing *Kaufman v. Provident Life and Cas. Ins. Co.*, 828 F.Supp. 275, 282 (D.N.J.1992), *aff'd*, 993 F.2d 877 (3d Cir. 1993)); *Air Master Sales Co. v. Northbridge Park Co-Op, Inc.*, 748 F.Supp. 1110, 1114 (D.N.J.1990) (citations omitted); *Vanguard Telecommunications, Inc. v. Southern New England Tel. Co.*, 722 F.Supp. 1166, 1178 (D.N.J.1989) ("[w]hen ruling on a summary judgment motion ... 'the court is being asked to rule on whether, as a matter of law, the contract is susceptible of only one interpretation.' ") (citation omitted), *aff'd*, 900 F.2d 645 (3d Cir.1990).

■ The determination of whether a term is clear or ambiguous is a question of law. *Kaufman*, 828 F.Supp. at 283 (citing *Nevets C.M., Inc. v. Nissho Iwai American Corp.*, 726 F.Supp. 525, 531 (D.N.J.1989), *aff'd*, 899 F.2d 1218 (3d Cir.1990); *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 362 (3d Cir.1987), *cert. dismissed*, 506 U.S. 1042, 113 S.Ct. 834, 122 L.Ed.2d 111 (1992); *Kroblin Refrigerated Xpress, Inc. v. Pitterich*, 805 F.2d 96, 101 (3d Cir.1986)); *Air Master Sales Co.*, 748 F.Supp. at 1115 (citations omitted); *Armco Inc. v. Glenfed Financial Corp.*, 746 F.Supp. 1249, 1251 (D.N.J.1990). Interpretation of an ambiguous contract term, however, is a question for a trier of fact. *Kaufman*, 828 F.Supp. at 293; *Teamsters Indus. Employees Welfare Fund v. Rolls–Royce Motor Cars, Inc.*, 989 F.2d 132, 135 (3d Cir.1993); *Ram Const. Co., Inc. v. American States Ins. Co.*, 749 F.2d 1049, 1051 (3d Cir.1984); *Air Master Sales Co.*, 748 F.Supp. at 1115 (citations omitted); *Armco Inc.*, 746 F.Supp. at 1251; *Vanguard Telecommunications, Inc.*, 722 F.Supp. at 1178.

The parties agree the contract provision in dispute is not so ambiguous as to create a genuine issue of material fact. The parties have stipulated to the material facts and seek to resolve the dispute as a matter of law. "[I]t is only necessary for the [c]ourt to construe and apply the Waiver [of Premium provision] to the stipulated facts." Seidenberg Brief at 2. This matter, therefore, is ripe for summary judgment.

**B.** *Standard for Insurance Policy Interpretation*

Jurisdiction is alleged pursuant to 28 U.S.C. § 1332(a)(1). Accordingly, the substantive law of New Jersey, the forum state, applies. *Salve Regina College v. Russell*, 499 U.S. 225, 226, 111 S.Ct. 1217, 1218, 113 L.Ed.2d 190 (1991) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)).

■ Insurance policies are contracts of adhesion. *Doto v. Russo*, 140 N.J. 544, 555, 659 A.2d 1371 (1995); *Schmidt v. Smith et al.*, 294 N.J.Super. 569, 582–83, 684 A.2d 66, 72–73 (App.Div.1996). They are often unilaterally prepared by individuals well-versed in the intricacies of insurance law. *Doto*, 140 N.J. at 555, 659 A.2d 1371. The insured, void of bargaining power, must "choose between accepting the policy as offered, or face the perils of doing ... without insurance coverage." *Harvester Chemical Corp. v. Aetna Cas. & Sur. Co.*, 277 N.J.Super. 421,

430, 649 A.2d 1296 (App.Div.1994) (citing *Sparks,* 100 N.J. at 338, 495 A.2d 406), *certif. denied,* 139 N.J. 441, 655 A.2d 443 (1995). *See also Doto,* 140 N.J. at 555, 659 A.2d 1371. In the face of this inequity, the courts "assume a vigilant role in ensuring ... principles of fairness and conformity to public policy." *Schmidt,* 684 A.2d at 72–73 (citing *Sparks v. St. Paul Ins. Co.,* 100 N.J. 325, 335, 495 A.2d 406 (1985)). *See also Doto,* 140 N.J. at 556, 659 A.2d 1371 (1995) (citation omitted); *Paul Revere Life Ins. Co. v. Haas,* 137 N.J. 190, 199, 644 A.2d 1098 (1993).

■ Basic tenets of construction guide the resolution of insurance contract disputes. Language of an insurance policy that is clear and unambiguous will be given its ordinary meaning. *Longobardi v. Chubb Ins. Co. of New Jersey,* 121 N.J. 530, 537, 582 A.2d 1257 (1990); *Imperial Cas. and Indem. Co. v. High Concrete Structures, Inc.,* 858 F.2d 128, 131 (3d Cir.1988); *Daus v. Marble,* 270 N.J.Super. 241, 251, 636 A.2d 1091 (App.Div. 1994); *American Casualty Co. v. Resolution Trust Co.,* 839 F.Supp 282, 290 (D.N.J.1993). *See also Bergholm v. Peoria Life Ins. Co. of Peoria, Ill.,* 284 U.S. 489, 492, 52 S.Ct. 230, 231, 76 L.Ed. 416 (1932). The terms of an insurance policy should be read to avoid ambiguities. *American Casualty Co.,* 839 F.Supp. at 290.

■ "A contract is ambiguous if it is susceptible of more than one meaning." *Sumitomo Mach. Corp. of Am., Inc. v. AlliedSignal, Inc.,* 81 F.3d 328, 332 (3d Cir.1996) (citations omitted); *Pennbarr Corp. v. Insurance Co. of North America,* 976 F.2d 145, 151 (3d Cir.1992) (citing *Tigg Corp.,* 822 F.2d at 362); *Kaufman,* 828 F.Supp. at 283; *Air Master Sales Co.,* 748 F.Supp. at 1115; *Armco Inc.,* 746 F.Supp. at 1251. An insurance policy is not ambiguous, however, merely because it is complex. *Pennbarr Corp,* 976 F.2d at 151 (citing *Transamerica Ins. Co. v. Keown,* 451 F.Supp. 397, 400 (D.N.J.1978)).

The goal is to decide whether "there [are] objective indicia that, from the linguistic reference point of the parties, the terms of the contract are susceptible of different meanings." *In re New Valley Corp.,* 89 F.3d 143, 150 (3d Cir.1996) (citations omitted); *Sumitomo Mach. Corp., Inc.,* 81 F.3d at 332 (citation omitted). The "[w]ords of the agreement, alternative meanings suggested by counsel, and extrinsic evidence offered in support of those meanings" are determinative of ambiguity. *Pennbarr,* 976 F.2d at 151 (quoting *International Union, United Auto v. Mack Trucks, Inc.,* 917 F.2d 107, 111 (3d Cir.1990), *cert. denied,* 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991)).

If the language in the insurance policy is capable of different interpretations, "courts invariably accept the interpretation under which coverage will be found and reject the interpretation under which the injured person would be left without protection." *Lemos v. Sousa,* 294 N.J.Super. 28, 32, 682 A.2d 277 (Law Div.1996) (quoting Craig and Pomeroy, *New Jersey Auto Insurance Law,* § 2:3–1 (1996)). *See also Allen v. Metropolitan Life Ins. Co.,* 44 N.J. 294, 305, 208 A.2d 638 (1965) ("[New Jersey Courts] have consistently construed policy terms strictly against the insurer and where several interpretations were permissible, we have chosen the one most favorable to the assured").

■ When the meaning of a phrase in an insurance contract is ambiguous, the ambiguity will generally be resolved in favor of the objectively reasonable expectations of the insured. *Doto,* 140 N.J. at 556, 659 A.2d 1371 (1995); *Lindstrom v. The Hanover Ins., Co.,* 138 N.J. 242, 250–51, 649 A.2d 1272 (1994); *Clients' Security Fund v. Security Title and Guarantee Co.,* 134 N.J. 358, 372, 634 A.2d 90 (1993); *Voorhees v. Preferred Mut. Ins. Co.,* 128 N.J. 165, 175, 607 A.2d 1255 (1992); *Salem Group v. Oliver,* 128 N.J. 1, 4, 607 A.2d 138 (1992); *Meier v. New Jersey Life Ins. Co.,* 101 N.J. 597, 612, 503 A.2d 862 (1986); *Sparks,* 100 N.J. at 336, 495 A.2d 406; *DiOrio v. New Jersey Mfrs. Ins. Co.,* 79 N.J. 257, 269, 398 A.2d 1274 (1979); *Vargas v. Hudson County Bd. of Elections,* 949 F.2d 665, 672 (3d Cir.1991). An insurance contract should comport with the parties' intent and with the reasonable expectations of the insured. *Oritani Savings and Loan Ass'n v. Fidelity and Deposit Co. of Maryland,* 989 F.2d 635 (3d Cir.1993).

■ Under the doctrine of reasonable expectations, even an unambiguous contract

may be interpreted contrary to its plain meaning. *Voorhees,* 128 N.J. at 175, 607 A.2d 1255; *Werner Indus., Inc. v. First State Ins. Co.,* 112 N.J. 30, 35–36, 548 A.2d 188 (1988); *Gerhardt v. Continental Ins. Cos.,* 48 N.J. 291, 225 A.2d 328 (1966) (language in issue not deemed to be ambiguous, but was insufficiently clear to justify depriving the insured of her reasonable expectation). *See also Oritani,* 989 F.2d at 638 (it must be determined "whether the policy language is insufficiently clear such that the average policyholder would be deprived of a reasonable expectation of coverage").

■ The court, however, may not make a better contract than the parties initially entered into. *Kampf v. Franklin Life Ins. Co.,* 33 N.J. 36, 43, 161 A.2d 717 (1960); *Stanton v. Rich Baker Berman & Co., P.A.,* 876 F.Supp. 1373, 1384 & n. 12 (D.N.J.1995) (citations omitted). A court may not rewrite the terms of a policy or give them a construction in conflict with the accepted and plain meaning of the language of the policy. *See Pennbarr,* 976 F.2d at 151 (citing *In re Community Medical Ctr.,* 623 F.2d 864, 866 (3d Cir. 1980)); *Kampf,* 33 N.J. at 43; *American Casualty Co.,* 839 F.Supp. at 290 ("a strained or distorted meaning will not be indulged in and the claus[e] in an insurance policy will be given [its] ordinary and usual meaning").

MONY argues Seidenberg has conceded the Waiver of Premium term is unambiguous, and, therefore, the Insurance Policy should not be construed in favor of the insured and against the insurer. MONY Reply at 2–3 (citing Seidenberg Brief at 2–4). MONY urges the terms of the policy should be afforded "their 'plain and ordinary meaning'." MONY Reply at 1 (citing *Kaufman,* 828 F.Supp. at 283 (D.N.J.1992) (quoting *Armco Inc.,* 746 F.Supp. at 1252)).

Miriam Seidenberg contends the "special rules of interpretation" applied in New Jersey for insurance contracts necessitate a determination of the language in favor of the insured and against the insurer. *See* Seidenberg Brief at 3 (citations omitted). Miriam Seidenberg argues she is entitled to the full face value of the Insurance Policy.

### C. *Waiver of Premium*

■ As mentioned, in December 1983, Phyllis Seidenberg purchased an optional Waiver of Premium rider as an additional benefit to her MONY Insurance Policy. The Waiver of Premium provision lies at the center of the instant dispute. The language of the Waiver of Premium states, in relevant part:

THE BENEFIT—We shall waive payment of certain premiums if: (a) the Insured incurs total disability, as defined below; (b) that disability starts before age 65 and while this rider is in force; *and* (c) that disability continues with no interruption *during the insured's lifetime for 6 months.* Waiver will take place when due proof is given to us, at our Home Office, that (a), (b) and (c) above has occurred. DISABILITY STARTING BEFORE AGE 60—If the disability starts before age 60, all premiums will be waived which (a) became due during such 6 months; and (b) thereafter become due while total disability continues. But, in no case will any premium be waived if it becomes due before the policy anniversary nearest the Insured's 5th birthday.

*See* Insurance Policy at 15 (emphasis added).

It is undisputed Phyllis Seidenberg's total disability existed for two and one half months, from 1 November 1993 to 20 January 1994. It is also undisputed Phyllis Seidenberg failed to pay the 5 December 1993 premium which caused the Insurance Policy to lapse. It is the position of MONY that the Waiver of Premium provision did not excuse this lapse because the total disability of Phyllis Seidenberg did not "continue[] with no interruption during [her] lifetime for [six] months." MONY Brief at 4–5 (citing Insurance Policy at 15). MONY, therefore, argues Miriam Seidenberg is entitled to receive only the paid-up value of the Insurance Policy. *Id.* at 11.

#### 1. *Field Underwriter's General Information Guide*

■ Miriam Seidenberg argues no reasonable person could construe the Waiver of Premium provision to require the insured to remain alive in total disability for six months

before the premiums were waived. Seidenberg brief at 4–5. In support of her argument, Seidenberg relies on language contained in "The Field Underwriter's General Information Guide" (the "Underwriter Guide"), a manual issued by MONY to its agents. *See* Underwriter Guide, attached as Exhibit B to Joint Stipulation of Facts. This manual is not part of the Insurance Policy. Extrinsic evidence, however, may be offered by a party in support of the submitted interpretation of a policy provision. *Mack Trucks*, 917 F.2d at 111 (citation omitted).

The relevant section of the Underwriter's Guide that explains the Waiver of Premium provision states, in pertinent part,

> The Benefit—Premiums are waived if the insured becomes totally disabled before age 65 and such disability continues uninterrupted for a period of 6 months.
>
> . . .
>
> Disability Starting Before Age 60—Premiums are waived that *become* due during the 6 month waiting period as well as any subsequent premiums that become due as long as total disability continues.

Underwriter's Guide at 133 (emphasis added).

Miriam Seidenberg appears to find it significant that the Waiver of Premium provision in the Insurance Policy will waive premiums that *became* due during the six month interval, while the Underwriter's Guide states premiums will be waived that *become* due during the time frame. Seidenberg Brief at 10. Miriam Seidenberg argues the Underwriter's Guide demonstrates the interpretation urged by MONY, the retroactive

waiver of premiums after the six month period, is contrary to common sense and a reasonable construction of the Waiver of Premium provision. Seidenberg Brief at 10.

The rewording of the Waiver of Premium provision in the Underwriter's Guide is not dispositive. The Underwriter's Guide makes clear the premiums will be waived only if "the insured becomes totally disabled before 65 and such disability continues uninterrupted for a period of [six] months." *See* Underwriter's Guide, at 133. The six month requirement for the disability must be satisfied before waiver is effected. This construction is consistent with other language of the Waiver of Premium in the Insurance Policy, which states MONY "shall refund any premium paid which would be waived under the terms of the rider." [4] Insurance Policy at 15.

Although the tense of the word "become" in the Underwriter's Guide may arguably suggest the premiums will be waived as they become due, this language is not a part of the Insurance Policy. No evidence has been presented to suggest Phyllis Seidenberg was aware of the language in the Underwriter's guide or relied upon it when deciding whether to purchase the Waiver of Premium provision. Indeed, the testimony of William Goren ("Goren"), MONY agent who issued the Insurance Policy to Phyllis Seidenberg, indicates there was no discussion that he could recall concerning the Waiver of Premium provision in the Insurance Policy.[5] *See* 13 February 1996 Deposition of Goren ("Goren Dep."), attached to Seidenberg Appendix at 18, 18:21–24, 19:12–20. Accordingly, the argument of Miriam Seidenberg that the lan-

---

**4.** Even accepting the argument that MONY agreed to waive premiums as they became due does not relieve Phyllis Seidenberg of the requirement that her disability had to continue during her lifetime for six months. If Phyllis Seidenberg had recovered from her illness after being totally disabled from 1 November 1993 until 20 January 1994, there would be no question she would have been required to pay the missed payment because the disability was not continuous for six months. Similarly, there is no reason that death, which triggers another benefit under the Insurance Policy, would also have required payment of a missed premium. Because the Waiver of Premium specifically required continuous disability *during her lifetime* for six months, interpreting the provision to ex-

cuse the payments as they became due is unavailing.

**5.** Miriam Seidenberg attempts to introduce evidence concerning Goren's understanding of the Waiver of Premium provision. However, the impression of Goren as to the meaning of the provision is irrelevant. Evidence of what agents and underwriters think about coverage does not create any inference about the expectations of the insured. *Vargas*, 949 F.2d at 672. Moreover, the Insurance Policy explicitly precluded Phyllis Seidenberg from relying on representations about the Insurance Policy which were not in the written application. *See* Insurance Policy at 9.

guage in the Underwriter's Guide provides some guidance as to what may be deemed a reasonable interpretation of the Waiver of Premium provision is unpersuasive.

## 2. *Six Month Requirement*

Miriam Seidenberg relies on the reasoning of the New Jersey Supreme Court in *Kampf,* to support her argument that the Waiver of Premium was not rendered ineffective because Phyllis Seidenberg did not survive for six months before the Waiver of Premium provision was triggered. Seidenberg Brief at 11–14.

In *Kampf,* the insured died on 22 April 1958. 33 N.J. at 36. The policy lapsed when he failed to pay a premium which was due on 21 March 1958. The policy contained a waiver of premium provision for which the insured paid an additional charge. The provision at issue in *Kampf* provided for waiver of the premium payments which became due after the commencement of total disability. The insurance policy stated that an insured is totally disabled when he

> is and will be continuously and wholly prevented thereby from performing any work or transacting any business for compensation or profit and that such disability has already continued uninterrupted for a period of at least six months (*such disability of such duration being treated as permanent only for the purpose of determining the commencement of the benefit hereunder* ).

*Id.* at 45 (emphasis added).

The *Kampf* court focused on the underscored parenthetical to determine that the purpose of the six month provision was to ensure the disability of the insured was permanent. *Kampf,* 33 N.J. at 47–49, 161 A.2d 717 (citing *Lenkutis v. New York Life Ins. Co.,* 374 Ill. 136, 28 N.E.2d 86, 90–91 (1940) ("the six-months period is the time fixed for the purpose of determining presumptive permanency of the disability ....") and *Commonwealth Life Ins. Co. v. Francis,* 278 Ky. 343, 128 S.W.2d 742 (1939) ("The obvious purpose of the language of the policy that such disability must have continued for a

period of at least four months is that the company might determine and establish definitely that the disability was permanent and total"). Because the waiting period existed only to determine permanency of a disability, the *Kampf* court reasoned that death, as the most permanent and total of all disabilities, would not preclude the insured from recovering the full face value of the policy. *Kampf,* 33 N.J. at 49, 161 A.2d 717.[6]

Other cases also have construed the waiting period associated with a waiver of premium provision to be proof of the permanency and totality of the disability. *See, e.g., Simpson v. Jefferson Standard Life Ins. Co.,* 465 F.2d 1320, 1325 (6th Cir.1972); *Francis,* 128 S.W.2d at 744. Like *Kampf,* the provisions at issue in the cases cited by Miriam Seidenberg establish a clear nexus between the durational requirement in the waiver provision and the presumption of the permanency of the disability. *Simpson,* 465 F.2d at 1322 ("[s]uch total disability shall be presumed to be permanent ... when it is present and has existed continuously for not less than six consecutive months"); *Francis,* 128 S.W.2d at 744 ("such disability of such duration being deemed to be permanent only for the purpose of determining the commencement of the liability hereunder"). *See also Lenkutis,* 28 N.E.2d at 90–91 ("[o]ur conclusion is confirmed by the parenthetical provision 'such total disability of such duration being presumed to be permanent only for the purpose of determining liability hereunder,' tending to demonstrate that the six month period is ... for the purpose of determining presumptive permanency of the disability...."); *Mutual Life Ins. Co. v. Morris,* 191 Ark. 88, 83 S.W.2d 842, 843 (1935) (parenthetical provision stated, "total disability of such duration [4 months] being presumed to be permanent during its continuance"); *Kingsford v. Business Men's Assur. Co. of Am,* 57 Idaho 727, 68 P.2d 58, 59 (1937) (requirement of four months of continuous disability follows language defining total and permanent disability); *National Standard Life Ins. Co. v. Smith,* 75 S.W.2d 1102, 1103 (Tex.Ct.App.1935) (parenthetical provision

---

**6.** Notably, unlike the instant Waiver of Premium provision, the *Kampf* provision did not require the disability to continue for six months *during the insured's lifetime.*

stated, "such disability of such duration being deemed to be permanent").[7]

The Waiver of Premium provision at issue, however, is distinguishable. Unlike the *Kampf* provision, the instant Waiver of Premium does not parenthetically correlate the six month requirement with the permanency and totality of the disability. The six month durational requirement is not presented with the definition of total disability, which falls beneath a separate heading in the Waiver of Premium provision.[8] Rather, the six-month requirement is one of three unambiguous conditions that must be met before the premiums are waived. The language of the Waiver of Premium requires the disability to continue uninterrupted for six months during the insured's lifetime before the payments will be waived. This is a condition precedent to payment waiver. If the disability is interrupted, whether by recovery or death, the Waiver of Premium is not invoked.

In *Martin v. New York Ins. Co.*, 621 F.2d 159 (5th Cir.1980),[9] the provision for the waiver of premium stated the defendant would waive the payment of each premium falling due after the total disability begins "if the [i]nsured is totally disabled ... and has been continuously so disabled for at least six months." The decision held that the retroactive waiver of premium payments was conditioned on the insured being continuously disabled for six months. The insured, who was totally disabled for only four months before he died, failed to pay the premium. The court held the insured could not invoke the benefit of the waiver of premium provision because he could not establish continuous disability for at least six months. *Id.* at 161.

Other cases follow similar reasoning. *See Avery v. New York Life Ins. Co.*, 67 F.2d 442 (5th Cir.1933) ("[i]t was not every disability that obligated the company to waive premiums, but only such disability as began before default in the payment of premiums and had continued at least four months at the time proof was made"); *Missouri State Life Ins. Co. v. Hardin*, 168 Tenn. 340, 78 S.W.2d 832, 833 (1934) (insurer was liable "only upon condition that the disability has continued for six months"); *Missouri State Life Ins. Co. v. Nidiffer*, 168 Tenn. 584, 79 S.W.2d 1024, 1025 (1935) (holding that "[b]efore there can be anything due under the policy for total and permanent disability, such disability must have existed for six months. It is only after the expiration of this period that the liability of the company accrues"); *Western & Southern Life Ins. Co. v. Smith*, 41 Ohio App. 197, 180 N.E. 749, 751 (4th Dist.1930).

■ The threshold issue in the instant case is whether the Waiver of Premium clause will excuse an individual who is continuously disabled for less than three months and fails to pay her premium before death occurs. The unambiguous language of the Insurance Policy says it does not. The Waiver of Premium provision specifically requires the insured to be continuously disabled for six months during her lifetime before her payments are waived. The Waiver of Premium provides for the refund of any payments paid by the insured during the six month period. *See* Insurance Policy at 15.

The Waiver of Premium provision is, as the parties agree, unambiguous. Seidenberg Brief at 2–4; MONY Brief at 2. The facts in the instant matter do not present a situation whereby, under the doctrine of reasonable expectations, an unambiguous contract will be interpreted contrary to its plain meaning. *Oritani*, 989 F.2d at 638 ("reasonable expec-

---

7. In addition, Miriam Seidenberg cites *Swann* and *Minnesota Mutual Life Ins. Co. v. Marshall*, 29 F.2d 977 (8th Cir.1928), *cert. denied*, 279 U.S. 851, 49 S.Ct. 347, 73 L.Ed. 994 (1929). In *Marshall*, the waiver provision did not require the insured to be continuously disabled for a set period of time. *Swann* discusses whether proof of disability is a condition precedent to the right of a waiver of premiums "where the [i]nsured has become, while the policy is in force, mentally and physically incapable of giving the notice ... to the company...." *Swann v. Atlantic Life Ins. Co.*, 156 Va. 852, 159 S.E. 192, 195 (1931).

8. The Waiver of Premium provision defined total disability as that which: (a) results from bodily injuries or disease; and (b) wholly prevents the Insured from engaging in an occupation for remuneration or profit; and (c) results from a cause not mentioned under "Risk Not Assumed".

   *See* Insurance Policy at 15.

9. The Fifth Circuit affirmed on the basis of the memorandum decision filed by the district court, which it attached as an appendix.

tations must be examined when 'the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage' ") (citations omitted). *See also Gerhardt*, 48 N.J. at 299, 225 A.2d 328 (1966) (although purpose of the insurance term was understandable when explained, it was "highly unlikely that the ordinary insured would have so understood it on his or her own reading").

The language in issue is not unclear and, therefore, does not justify controverting the plain language of the Insurance Policy. Nor are there "[h]idden or unfair reservations" in the Waiver of Premium provision that should be ignored because they are contrary to the reasonable expectation of the insured. *Heaton v. State Health Benefits Comm'n*, 264 N.J.Super. 141, 151, 624 A.2d 69 (App.Div. 1993) (citing *Voorhees*, 128 N.J. at 175, 607 A.2d 1255; *Sparks*, 100 N.J. at 336, 495 A.2d 406).

Any interpretation of the Waiver of Premium other than the one suggested by MONY "strain[s] the language of the policy to find an ambiguity where there is none in order to grant coverage that does not exist." *Oritani* 989 F.2d at 639 (citing *McNeilab, Inc. v. North River Ins. Co.*, 645 F.Supp. 525, 543 (D.N.J.1986), *aff'd*, 831 F.2d 287 (3d Cir. 1987).

*Conclusion*

Based on the foregoing, the Seidenberg Motion for Summary Judgment is denied; the MONY Motion for Summary Judgment is granted.