NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R. 1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-4895-15T2

T.L.H.

 Plaintiff-Appellant,

v.

M.H.,

 Defendant-Respondent.

____________________________

 Submitted August 30, 2017 – Decided November 14, 2017

 Before Judges Alvarez and Gooden Brown.

 On appeal from Superior Court of New Jersey,
 Chancery Division, Family Part, Union County,
 Docket No. FM-20-0910-13.

 Ronald A. Cohen, attorney for appellant.

 Andrew M. Wolfenson, attorney for respondent.

PER CURIAM

 Plaintiff appeals from the May 27, 2016 Family Part order

terminating defendant's alimony obligation pursuant to the

parties' Marital Settlement Agreement (MSA). We affirm.

 After a twenty-year marriage, the parties divorced on July

11, 2013. An Amended Final Judgment of Divorce (JOD) was filed
on August 19, 2013, which incorporated an MSA requiring defendant

to pay alimony in the amount of $500 per week, effective September

1, 2013. The MSA provided that the alimony would "increase to

$700 per week when [plaintiff was] forced to leave the marital

home due to . . . foreclosure." In paragraph 5.2, the MSA provided

that alimony would terminate:

 [U]pon the death of either party, or the
 marriage or cohabitation of [plaintiff]. The
 term "cohabitation[,"] in addition to its
 meaning as construed by New Jersey courts,
 shall also incorporate the scenario if
 [plaintiff] should take up residence with any
 family members (other than the children of the
 parties) or friends.

 Paragraph 8.1 of the MSA provided, in pertinent part:

 In arriving at this agreement both [plaintiff]
 and [defendant] had an opportunity to obtain
 the assistance of separate legal counsel and
 to be advised regarding the legal and
 practical effects of this [a]greement. . . .
 The parties have read this agreement in its
 entirety and each of them has entered
 voluntarily into this agreement. They have
 consented to and assume all of the covenants
 herein contained, having read the same and
 having fully understood them. They both
 acknowledge that it is a fair, just and
 reasonable agreement and [is] not the result
 of any fraud, duress, or undue influence
 exercised by either party upon the other or
 by any other person and that there have been
 no representations, warranties, covenants, or
 undertaking other than those as set forth
 herein.

 2 A-4895-15T2
 On October 22, 2015, plaintiff was forced out of the former

marital home, due to a Sheriff's sale, and moved in with her

sister. When defendant ceased paying alimony, plaintiff moved to

enforce litigant's rights. In support of her motion, plaintiff

certified that she was paying her sister $800 per month to live

with her, which increased her monthly expenses. Plaintiff

explained "[t]he whole reason [she] negotiated an increase in

alimony after [she] left the former marital home [was] because

[she] knew [her] expenses would be higher."

 Based on plaintiff's cohabitation with her sister, defendant

cross-moved to terminate his alimony obligation in accordance with

paragraph 5.2 of the MSA. Defendant averred "the whole reason

. . . [he] negotiated [p]aragraph 5.2 . . . [was] because [he]

expected that [plaintiff] would move in with her sister or another

family member." Plaintiff countered in a reply certification that

she disagreed with "defendant's definition of cohabitation[.]"

According to plaintiff, "living with someone and cohabiting with

them are two different things." Plaintiff admitted that she was

living in her sister's home; however, her understanding of

"cohabitation, for the purpose of alimony, mean[t] that someone

else [was] supporting [her] or significantly contributing to [her]

support[,]" which was not the case. Plaintiff certified that she

 3 A-4895-15T2
was unable to work and had applied for disability benefits, but

was denied because of her receipt of alimony.

 Plaintiff sustained injuries after a fall, which resulted in

the adjournment of the plenary hearing on the motions. Over the

next three months, conflicting schedules thwarted reaching an

agreement on a new date. As a result, on May 27, 2016, the trial

court granted defendant's cross-motion on the papers. In the

statement of reasons accompanying the May 27, 2016 order, the

court acknowledged that "[w]hile plaintiff [was] not cohabitating

in the legal sense of the word as defined by case law, . . . she

[was cohabitating] for purposes of the parties' own [MSA]." The

court noted that a MSA was favored by courts, and was "essentially

a contract, which [was] to be enforced as written, absent a

demonstration of fraud or other compelling circumstances."

 The court rejected plaintiff's argument, pointing out that:

 Plaintiff does not argue that she did not
 understand the terms of the MSA or that there
 was some level of fraud, duress or undue
 influence involved, she merely argued that her
 cohabitation is not cohabitation at all under
 current case law. While [p]laintiff is
 correct in her assertion that residing with
 her sister does not rise to the level of
 cohabitation under Konzelman [v. Konzelman,
 158 N.J. 185 (1999)], her own MSA carves out
 an express addition to the meaning of
 cohabitation, which she seemingly chooses to
 ignore.

The court concluded:

 4 A-4895-15T2
 The parties' MSA is explicit and unambiguously
 includes taking up residence with a family
 member under the definition of cohabitation,
 as [p]laintiff admits she has. It is
 uncontroverted that [p]laintiff resides with
 her sister, who is clearly a family member,
 which would then trigger the cohabitation
 provision of the MSA. Additionally, the MSA
 includes a provision outlining that the
 agreement was entered into freely and
 voluntarily and without coercion. It is clear
 that while [p]laintiff's residing with her
 sister does not equate to the Konzelman
 definition of "cohabitation," the parties
 voluntarily expounded the definition for
 purposes of their own agreement. Plaintiff
 never once in her moving papers certifies that
 she was unaware of the provision, did not
 understand the meaning, or signed the
 agreement under duress. The [c]ourt will not
 venture to modify the parties' agreement,
 merely because [p]laintiff has now found it
 to [be] inconvenient. Of note, [p]laintiff
 did certify that she was denied disability
 benefits as a result of her receipt of
 alimony, therefore, the impediment of alimony
 will be removed, and [p]laintiff will be able
 to collect disability benefits leaving her in
 a similar position as she would have been in
 if she had continued to receive alimony
 payments. The [c]ourt finds that [p]laintiff
 is cohabiting under the parties' MSA,
 therefore, in accordance with same,
 [d]efendant's alimony obligation is
 terminated.

This appeal followed.

 On appeal, plaintiff argues that the court erred in

"[d]ispensing with the plenary hearing" because "[a] genuine issue

of fact existed . . . as to the intent of the parties in crafting

certain language in the [MSA]." Plaintiff also argues that the

 5 A-4895-15T2
court erred in interpreting the cohabitation clause so as to

dispense with the requirement to examine "the economic

circumstances[.]" We disagree.

 "Settlement of disputes, including matrimonial disputes, is

encouraged and highly valued in our system." Quinn v. Quinn, 225

N.J. 34, 44 (2016). "[I]t is 'shortsighted and unwise for courts

to reject out of hand consensual solutions to vexatious personal

matrimonial problems that have been advanced by the parties

themselves.'" Ibid. (quoting Konzelman, supra, 158 N.J. at 193).

"Therefore, 'fair and definitive arrangements arrived at by mutual

consent should not be unnecessarily or lightly disturbed.'" Id.

at 44-45 (quoting Konzelman, supra, 158 N.J. at 193-94).

"Moreover, a court should not rewrite a contract or grant a better

deal than that for which the parties expressly bargained." Id.

at 45.

 "An agreement that resolves a matrimonial dispute is no less

a contract than an agreement to resolve a business dispute" and

"is governed by basic contract principles." Ibid. "Among those

principles are that courts should discern and implement the

intentions of the parties" and not "rewrite or revise an agreement

when the intent of the parties is clear." Ibid. "Thus, when the

intent of the parties is plain and the language is clear and

unambiguous, a court must enforce the agreement as written, unless

 6 A-4895-15T2
doing so would lead to an absurd result." Ibid. "To the extent

that there is any ambiguity in the expression of the terms of a

settlement agreement, a hearing may be necessary to discern the

intent of the parties at the time the agreement was entered and

to implement that intent." Ibid. (citing Pacifico v. Pacifico,

190 N.J. 258, 267 (2007)).

 Undoubtedly, "'the law grants particular leniency to

agreements made in the domestic arena' and vests 'judges greater

discretion when interpreting such agreements.'" Id. at 45-46

(quoting Pacifico, supra, 190 N.J. at 266). Nevertheless, "the

court must discern and implement 'the common intention of the

parties' and 'enforce [the mutual agreement] as written[.]'" Ibid.

(citations omitted) (first quoting Tessmar v. Grosner, 23 N.J.

193, 201 (1957); then quoting Kampf v. Franklin Life Ins. Co., 33

N.J. 36, 43 (1960)). "A narrow exception to the general rule of

enforcing settlement agreements as the parties intended is the

need to reform a settlement agreement due to 'unconscionability,

fraud, or overreaching in the negotiations of the settlement.'"

Id. at 47 (quoting Miller v. Miller, 160 N.J. 408, 419 (1999)).

 In Quinn, supra, our Supreme Court considered a spouse's

receipt of alimony under a marital settlement agreement, and the

circumstances in which alimony may be terminated. The Court

acknowledged that "[i]n the absence of an agreement that permits

 7 A-4895-15T2
the obligor former spouse to cease payment of alimony, this Court

has permitted a modification of alimony, including cessation of

alimony, in the event of post-divorce cohabitation 'only if one

cohabitant supports or subsidizes the other under circumstances

sufficient to entitle the supporting spouse to relief.'" Id. at

49 (quoting Gayet v. Gayet, 92 N.J. 149, 153-54 (1983)).

 "On the other hand, when the parties have outlined the

circumstances that will terminate the alimony obligation, [the]

Court has held that it will enforce voluntary agreements to

terminate alimony upon cohabitation, even if cohabitation does not

result in any changed financial circumstances." Id. at 50. In

so doing, the Court reiterated its declination "to import the

Gayet economic dependence or reliance rule when the parties have

agreed in a marital settlement agreement that cohabitation is an

alimony-termination event." Id. at 55. The Court summarized its

holding thusly:

 [A]n agreement to terminate alimony upon
 cohabitation entered by fully informed
 parties, represented by independent counsel,
 and without any evidence of overreaching,
 fraud, or coercion is enforceable. . . . When
 a court alters an agreement in the absence of
 a compelling reason, the court eviscerates the
 certitude the parties thought they had
 secured, and in the long run undermines this
 Court's preference for settlement of all,
 including marital, disputes.

 [Ibid.]

 8 A-4895-15T2
 Here, there were no compelling reasons to depart from the

clear, unambiguous, and mutually understood terms of the MSA.1 The

agreement was voluntary, knowing and consensual, and the alimony-

termination event upon cohabitation was fair under the

circumstances of the case. We agree with the court's finding

that, while residing with her sister does not rise to the level

of cohabitation under Konzelman, supra, plaintiff understood that

residing with her sister was an event that could trigger

termination of alimony under the description of cohabitation

specified in her MSA. In our view, the explicit terms in the MSA

obviated the need for a plenary hearing. Accordingly, we find no

error in the court deciding the cross-motion on the papers.

 Affirmed.

1
 On September 10, 2014, the Legislature enacted N.J.S.A. 2A:34-
23, which provides that "[a]limony may be suspended or terminated
if the payee cohabits with another person." L. 2014, c. 42, § 1.
The Legislature clarified that this law "shall not be construed
either to modify the duration of alimony ordered or agreed upon
or other specifically bargained for contractual provisions that
have been incorporated into: a. a final judgment of divorce or
dissolution; b. a final order that has concluded post-judgment
litigation; or c. any enforceable written agreement between the
parties." Id. § 2. Because this law was enacted after the MSA
in this case was entered, it does not govern this case, and, in
any event, the terms of the MSA apply. See Quinn, supra, 225 N.J.
at 51 n.3.

 9 A-4895-15T2